1  David L. Gernsbacher, Cal. Bar No. 89596
2  Email: dgernsbacher@dlglaw.com
   LAW OFFICES OF DAVID L. GERNSBACHER APC
3  9100 Wilshire Boulevard, Suite 725E
   Beverly Hills, CA 90212-3431
4  Tel: 310-550-0125
5  Fax: 310-550-0608

6  Attorney for Defendants Rin, Inc., Jeff Miller and
   Alexander "Sasha" Jenson
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **WESTERN DIVISION**

11

12 SCOTT DUTHIE, an individual residing    )    Case No. 2:20-cv-10182-AB-PLA
   in Montana,                             )
13                                         )    **NOTICE OF SPECIAL MOTION**
              Plaintiff,                   )    **TO STRIKE AND SPECIAL**
14                                         )    **MOTION TO STRIKE [CA CCP**
              v.                           )    **§425.16]; MEMORANDUM OF**
15                                         )    **POINTS AND AUTHORITIES**
                                           )
16 RIN, INC. a California corporation;     )
   JEFF MILLER, an individual in           )    [Filed concurrently herewith:
17 California; ALEXANDER "SASHA"           )    (1) Declarations of Jeff Miller and
   JENSON, an individual in California;    )    Alexander "Sasha" Jenson; (2) Exhibits
18 WARNER BROS. ENTERTAINMENT              )    to Declarations of Jeff Miller and
   INC., a Delaware corporation; and Does  )    Alexander "Sasha" Jenson; (3) Request
19 1-10,                                   )    for Judicial Notice and Exhibits
20                                         )    thereto]
              Defendants.                  )
21                                         )
                                           )
22 _____   )
                                                Date: March 26, 2021
23                                              Time: 10:00 a.m.
                                                Crtrm: 7B
24                                                   350 W First St
25                                                   Los Angeles CA 90012
26
                                                Courtroom of the Honorable André
27                                              Birotte Jr., United States District Judge
28

                                                              **1**

**NOTICE OF SPECIAL MOTION TO STRIKE**

PLEASE TAKE NOTICE that on March 26, 2021, at 10:00 a.m. (PST), or as soon thereafter as the matter may be heard in Courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, California 90012, the Honorable André Birotte Jr., United States District Judge, presiding, Defendants Rin, Inc., Jeff Miller and Alexander "Sasha" Jenson (collectively, "Defendants") will and do hereby move this Court for an Order specially striking the Complaint filed by Plaintiff Scott Duthie ("Plaintiff") in the within action, and all purported claims against Defendants therein, pursuant to California Code of Civil Procedure ("CCP") section 425.16.

The grounds for Defendants' within Special Motion to Strike are that the Complaint and all purported claims therein against Defendants are subject to California's anti-SLAPP statute embodied in CCP §425.16, *et seq.*, because said Complaint and all purported claims therein arise from acts of Defendants in furtherance of Defendants' right of petition, and Plaintiff cannot establish a probability of prevailing on his purported claims. Accordingly, the Complaint and all causes of action against Defendants should be stricken, and the case dismissed in favor of Defendants.

Defendants' within Special Motion to Strike is based upon based on this Notice of Special Motion and Special Motion to Strike, the accompanying Memorandum of Points and Authorities, Defendants' Declarations of Jeffrey Miller and Alexander "Sasha" Jenson and Exhibits thereto in Support of Defendants' Special Motion to Strike and Defendants' Request for Judicial Notice and Exhibits thereto in Support of Defendants' Special Motion to Strike concurrently filed herewith, and all pleadings and other records on file herein, all additional matters of which judicial notice may be taken, and all other matters that may be presented at or prior to the hearing on the within Special Motion to Strike.

PLEASE TAKE FURTHER NOTICE that, pursuant to CCP §425.16 (c) (1),

RTT/Legal/Duthie Claim/pldgs/Anti-SLAPP Motion-revised-02232021

LAW OFFICE OF DAVID L. GERNSBACHER APC

upon the granting of this Special Motion to Strike, Defendants will request by separate motion/application their attorney fees and costs incurred in connection with the preparation and presentation of the within Special Motion to Strike.

Local Rule 7-3 Compliance: Prior to the drafting and filing of the within Motion, Defendants' counsel repeatedly requested that Plaintiff's counsel, John Garner, engage in meet and confer discussions concerning Defendants' intent to file a Special Motion to Strike pursuant to California Code of Civil Procedure section 426.15. Mr. Garner has ignored or rebuffed Defendants' counsel's request, demanding that Defendants' counsel accept service of process for Defendants and other unidentified "housekeeping issues," and threatened to cease the parties' settlement discussions.[1]

In light of Plaintiff and his counsel's failure to timely or otherwise provide a counter-offer as was represented to Defendants would occur, and given the need to make every effort to conclude this matter as soon as possible or risk losing the opportunity to enter into an option agreement with Warner Bros. for production of one or more Rin Tin Tin projects, Defendants had no choice but to prepare and file the within Motion; notwithstanding, should Plaintiff dismiss the instant action with prejudice, Defendants will forego their CCP section 425.16(c)(1) attorneys' fees claim.

Dated: February 25, 2021       /s/ David L. Gernsbacher
                               David L. Gernsbacher
                               LAW OFFICE OF DAVID L. GERNSBACHER APC
                               Attorney for Defendants Rin, Inc., Jeff Miller and
                               Alexander "Sasha" Jenson

---

[1]   Defendants' counsel pointed out to Mr. Garner that the filing of the Special Motion to Strike would render moot his demand that Defendants' counsel accept service of process for Defendants, to no avail.

LAW OFFICE OF DAVID L. GERNSBACHER APC

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ......................................................................... i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ................................................................. v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS ..................................................... 1

       A.    Introduction ........................................................... 1

       B.    Findings ................................................................ 2

       C.    Additional Facts ..................................................... 3

             1.    Kleven's Assignments of the RTT IP to Defendants, and
                   Plaintiff's Knowledge/Notice Thereof ......................................... 3

             2.    The *Kleven v. Hereford* U.S. District Court Trademark
                   Litigation, and Plaintiff's Knowledge/Notice Thereof................. 6

             3.    The May 2014 Deal Memo Between Kleven, Defendants,
                   Shamrock and Others ................................................ 6

             4.    Kleven's State Court Action against Defendants and Settlement,
                   and Plaintiff's Knowledge/Notice Thereof................................ 7

             5.    Defendants' Efforts to Exploit Its Rin Tin Tin IP, and Plaintiff's
                   Attempt to Hold Hostage Warner Bros. RTT Deal ........................ 9

III.   PLAINTIFF'S PURPORTED CLAIMS ARE SUBJECT TO CALIFORNIA'S
       ANTI-SLAPP STATUTE ........................................................ 11

       A.    Plaintiff's Purported Claims Arise Out of Defendants' Protected
             Activities .............................................................. 12

       B.    Plaintiff Cannot Demonstrate A Probability of Prevailing on His
             Purported Claims ........................................................ 17

LAW OFFICE OF DAVID L. GERNSBACHER APC

1.   California's Statute of Limitations Bars Plaintiff's Purported Claims ........................................................ 17

2.   Laches Bars Plaintiff's Purported Claims ................................. 18

3.   Plaintiff's Deliberate Eight Years of Intentional Silence Defeat His Purported Claims ...................................... 19

4.   Plaintiff's Knowledge/Notice of Defendants' RTT IP Rights Defeat His Purported Fraudulent Concealment Claim ............... 21

5.   Defendants' RTT IP Interest Defeats Plaintiff's Purported Intentional Interference Claim ................................... 21

6.   Plaintiff's Purported Declaratory Relief/Injunction Remedies Claim Is Barred and Defeated By the Same Defenses Which Bar and Defeat Plaintiff's Fraudulent Concealment and Interference Claims ...................................................... 24

VI. CONCLUSION .......................................................... 25

CERTIFICATE OF SERVICE ................................................ viii

LAW OFFICE OF DAVID L. GERNSBACHER APC

RTT/Legal/Duthie Claim/pldgs/Anti-SLAPP Motion-revised-02232021

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

adidas-*Am., Inc. v. Payless Shoesource, Inc.*,
    546 F. Supp. 2d 1029 (D. Or. 2008) ............................................................ 18

*Audette v. Int'l Longshoremen's and Warehousemen's Union*,
    195 F.3d 1107, 1111 (9th Cir. 1999) ................................................... 24

*Augusta v. United Service Automobile Assn.*,
    13 Cal.App.4th 4 (1993) .................................................................. 18

*Bank of the West v. Valley Nat. Bank of Arizona*,
    41 F.3d 471 (9th Cir. 1994) ............................................................ 21

*Bollinger v. National Fire Ins. Co.*,
    25 Cal.2d 399 ................................................................................ 19

*Boone v. Mech. Specialties Co.*,
    609 F.2d 956 (9th Cir. 1979) ........................................................... 18

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
    880 F.3d 1109 (9th Cir. 2018) ......................................................... 18

*Edwards v. Fresno Community Hosp.*,
    38 Cal.App.3d 702 (1974) ............................................................... 18

*Elliano v. Assurance Co. of America*,
    3 Cal. App. 3d 446 (1970) ............................................................... 20

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
    63 F.Supp.2d 1127 (N.D.Cal. 1999) ................................................ 11

*Hackethal v. National Casualty Co.*,
    189 Cal.App.3d 1102 (1987) ........................................................... 21

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (2002) ........................................................................ 18

*Knoell v. Petrovich*,
    76 Cal.App.4th 164 (1999) .............................................................. 18

*Marriage of Recknor*, In re,
    138 Cal.App.3d 539, 546 (1982) ..................................................... 20

LAW OFFICE OF DAVID L. GERNSBACHER APC

LAW OFFICE OF DAVID L. GERNSBACHER APC

*Miller v. Glenn Miller Prods., Inc.*,
    454 F.3d 975 (9th Cir. 2006) ........................................................ 18

*Morgan v. Gonzalez*,
    495 F.3d 1084, 1092 (9th Cir. 2007) ..................................... 20-21

*National Automobile and Casualty Insurance Co. v. Payne*,
    261 Cal.App.2d 403 (1968) ........................................................ 17

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir.1984) ....................................................... 22

*People v. Ocean Shore Railroad*,
    32 Cal.2d 406 (1948) .............................................................19-20

*Peregrine Entertainment, Ltd., In re*,
    116 B.R. 194 (C.D. Cal. 1990) ................................................... 23

*Robuck v. Dean Witter & Co., Inc.*,
    649 F.2d 641 (9th Cir. 1980) ...................................................... 17

*Rusheen v. Cohen*,
    *37 Cal.4th 1048 (2006)* ............................................................. 12

*Shouse v. Pierce Cty.*,
    559 F.2d 1142 (9th Cir. 1977) .................................................... 18

*Skulnick v. Roberts Express, Inc.*,
    2 Cal.App.4th 884 (1992) ........................................................... 20

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*,
    71 Cal.App.4th 1260 (1999) ....................................................... 20

*Stewart v. Ragland*,
    934 F.2d 1033 (9th Cir. 1991) .................................................... 20

*Stocke W., Inc. v. Confederated Tribes*,
    873 F.2d 1221, 1225 (9th Cir. 1989) .......................................... 24

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc.*,
    7 F.3d 1434 (9th Cir. 1993) ........................................................ 21

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n.*,
    953 F.3d 638 (9th Cir. 2020) ...................................................... 21

*Tu-Vu Drive-In Corp. v. Davies*,
    66 Cal.2d 435 (1967) ................................................................. 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................. 11

*Wilcox v. Superior Court*,
    27 Cal.App.4th 809, 819-20 (1994) ......................................... 11

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) .................................................... 21


Statutes

17 U.S.C.,
    Section 205(d) ......................................................................... 22

California Code of Civil Procedure,
    Section 338(d) ................................................................... 17, 19

California Code of Civil Procedure,
    Section 339 ....................................................................... 17, 19

California Code of Civil Procedure,
    Section 425.16 ................................................ i, ii, 1, 2, 11

California Code of Civil Procedure,
    Section 425.16(b)(1) ............................................................... 11

California Code of Civil Procedure,
    Section 425.16(c)(1) ................................................................. ii


Treatises

10 Cal.Jur.,
    Estoppel, § 16, pp. 631-632 ..................................................... 20

11 Witkin, Summary of Cal. Law (9th ed. 1990)
    Equity, § 179, p. 861 ............................................................... 20

LAW OFFICE OF DAVID L. GERNSBACHER APC

vii

**8**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3          This anti-SLAPP motion pursuant to California Code of Civil Procedure ("CCP")

4   section 425.16 seeks dismissal of the three purported claims asserted by Plaintiff Scott

5   Duthie ("Plaintiff" or "Duthie") against Defendants Rin, Inc., Jeff Miller ("Miller") and

6   Alexander "Sasha" Jenson ("Jenson") (collectively, "Defendants") for declaratory and

7   injunctive relief, fraudulent concealment and tortious interference with prospective

8   economic advantage.

9          First, in satisfaction of the first prong of the two prong analysis under section

10   425.16, Defendants direct the court's attention to the language and context of Plaintiff's

11   purported claims arising from Defendants' twice previously exercised right to petition,

12   including Plaintiff's unabashed attack on three constitutionally protected writings from

13   two different courts (one of which is this tribunal) memorializing rulings confirming

14   Defendants' RTT IP rights. Plaintiff's purported claims clearly arise out Defendants'

15   exercise of their constitutional rights covered by section 425.16.

16          Second, Plaintiff cannot meet his burden of establishing a probability of

17   prevailing on his claims, as a matter of law. Myriad complete defenses to Plaintiff's

18   purported claims presented herein based on (a) Federal and state statutes (the

19   Copyright Act and applicable California statutes of limitations, among others), (b)

20   irrefutable evidence (the majority of which consists of Plaintiff's own conduct) and

21   (c) application of long-established legal doctrines (laches, estoppel, failure to perfect

22   the purported assignment and other defenses) decisively preclude any probability of

23   Plaintiff prevailing on his claims, compelling the striking and dismissal of the claims.

24   **II.    STATEMENT OF FACTS**

25          **A.    Introduction**

26          Cognizant of their obligation to present a sufficiently detailed factual setting in

27   which to view this Motion, Defendants nonetheless believe that a lengthy recitation of

28   the history of Rin Tin Tin (sometimes, "RTT") and the RTT intellectual property ("IP") is

1

neither necessary nor an efficient use of resources of writer and reader alike, as well as duplicative, given the existence of extensive Findings of Fact and Conclusions of Law ("Findings") issued by this same Court on August 21, 2015, in that certain U.S. District Court, Central District of California case entitled *Max Kleven, et al. v. Daphne Hereford, et al.*, Case No. 2:13-cv-02783-AB-AGR. To this end, in their concurrently filed Request for Judicial Notice, Defendants respectfully request that the court take judicial notice of the Findings.

The Findings provide, to a substantial degree, and coupled with the relative handful of facts relating specifically to matters unique to the within matter set forth below, an historical vantage from which to view the within Motion's first proposition: that the purported claims against Defendants in Plaintiff's complaint arise from acts in furtherance of Defendants' right of petition. The Findings cited below, along with the Additional Facts submitted by Defendants, also provide a meaningful context for considering (and affirming) the within Motion's second proposition: that Plaintiff cannot, as a matter of law, meet his burden of demonstrating a probability of prevailing on his claims.

**B.    Findings**

For purposes of the within Motion, Defendants hereby refer to and incorporate herein by this reference as though set forth in full herein the following Findings (with each citation linked to the respective portions of the Findings in Defendants' Request for Judicial Notice):

(1)    Defendants' Request for Judicial Notice ("RJN"), Request No. 1, Findings, 2:3-7;

(2)    Defendants' RJN, Request No. 1, Findings, 5:5-7:25;

(3)    Defendants' RJN, Request No. 1, Findings, 12:6-15:16;

(4)    Defendants' RJN, Request No. 1, Findings, 20:9-17;

(5)    Defendants' RJN, Request No. 1, Findings, 22:3-24:21;

(6)    Defendants' RJN, Request No. 1, Findings, 25:5-9;

LAW OFFICE OF DAVID L. GERNSBACHER APC

RTT/Legal/Duthie Claim/pldgs/Anti-SLAPP Motion-revised-02232021

(7)    Defendants' RJN, Request No. 1, Findings, 30:11-32:3;

(8)    Defendants' RJN, Request No. 1, Findings, 34:19-36:21;

(9)    Defendants' RJN, Request No. 1, Findings, 37:17-39:20; and,

(10)   Defendants' RJN, Request No. 1, Findings, 55:7-12.

## C.    Additional Facts

For purposes of the within Motion, Defendants submit the following facts to augment the Findings of Fact cited above:

### 1.    Kleven's Assignments of RTT IP to Defendants, and Plaintiff's Knowledge/Notice Thereof

Following Casey LaScala ("LaScala") and Jenson's pitch to Kleven about a modern-day RTT project, Kleven agreed to partner with Jenson and LaScala an, on May 29, 2009, Kleven sent Jenson and LaScala an email entitled "**RIN TIN TIN PARTNERSHIP AGREEMENT BETWEEN MAX KLEVEN, SASHA JENSON AND CASEY LASCALA**" (emphasis in original), assigning Jenson and LaScala "a 50-50 ownership in all things Rin Tin Tin once Max Kleven recovers his one million dollars (the "2009 Partnership Agreement"). Declaration of Alexander "Sasha" Jenson ("Jenson Decl."), 1:11-24; Exhibit 1.

The 2009 Partnership Agreement **predates by more than two years** the purported assignment fifty percent of RTT IP assignment Plaintiff claims Kleven gave him for $1 on August 9, 2011. Plaintiff's instant claims are based upon this purported assignment. However, during the approximately 34 months Kleven, Jenson and LaScala worked together, held meetings and pitched various RTT-based projects pursuant to their 2009 Partnership Agreement, at no time did Kleven mention the purported assignment to, or any transaction with, Plaintiff. Jenson Decl., 1:25-2:3.

In or about late 2011, Jenson and LaScala enlisted Miller, an experienced producer and writer, to participate in developing RTT projects, and in early 2012 introduced Miller to Kleven. This led to Miller agreeing to become directly involved in the RTT projects venture. Declaration of Jeffrey Miller ("Miller Decl."), 3:21-23.

LAW OFFICE OF DAVID L. GERNSBACHER APC

3

**11**

Shortly thereafter, Kleven, Miller, Jenson and LaScala entered into first one, and then a second joint venture/attachment agreement, dated March 1, 2012 and September 12, 2012, respectively (the "2012 JV Agreements"). Miller Decl., 3:23-4:7; Exhibits 2 and 3.

Consistent with the 2009 Partnership Agreement, the 2012 JV Agreements provide for Jenson, LaScala and Miller to share a 50% interest in the RTT projects. Miller Decl., 4:8-9. Also, consistent with Kleven never mentioning a purported assignment to Plaintiff, in both agreements, Kleven [as "Owner"] expressly represents and warrants that "he owns all of the rights in and to" the RTT IP, that he "has the right to grant the rights granted" therein and that he has "not heretofore executed . . . any other agreement in conflict herewith." Miller Decl., 4:10-14.

In spring 2012, Miller became aware that a Daphne Hereford ("Hereford") was asserting rights in Rin Tin Tin. Kleven assured his three JV partners they should not be concerned, that Hereford's claims were frivolous and easily resolved. But in late 2012, Miller found out that Hereford obtained a U.S. Trademark Registration for the name "Rin Tin Tin" in the category of "Entertainment services in the field of motion pictures featuring a German Shepherd dog in international class 041." Miller Decl., 4:15-23.

At that point, the partners decided they had no choice but to file a lawsuit against Hereford, with Kleven agreement to assist and cooperate. Thereafter, Kleven, Miller and Jenson had a series of meetings to explore the history and related facts and circumstances of Hereford's piracy of the RTT trademarks and Kleven's dealings with Hereford, and to determine the strategy, direction and goals of the anticipated litigation against Hereford. Miller Decl., 4:24-5:3.

Plaintiff attended at least one of the meetings, in late 2012 or early 2013, at Kleven's home in Agua Dulce, near Santa Clarita, California. Kleven introduced Plaintiff to Miller and, in Plaintiff's presence, informed Miller that a few years back, Kleven had an "arrangement" with Duthie to let Duthie "shop around" a Rin Tin Tin movie project on Kleven's behalf, but nothing came of it and shortly thereafter Kleven

4

LAW OFFICE OF DAVID L. GERNSBACHER APC

1   ended the arrangement. Upon being reminded that his 2009 50/50 RTT Partnership

2   Agreement with Jenson and LaScala was in place during the "arrangement," Kleven

3   assured Miller that if Duthie had "gotten any traction," Kleven would have turned the

4   prospect over Jenson and LaScala to pursue. Miller Decl., 5:4-14.

5       Plaintiff left Kleven's house about 15 minutes later. At no time did Plaintiff voice

6   any disagreement with Kleven's explanation of his "arrangement" with Plaintiff or

7   mention the purported assignment. Miller Decl., 5:15-17.

8       In early 2013, Kleven, Miller, Jenson and LaScala negotiated and agreed upon a

9   more permanent arrangement between the parties that took into consideration, among

10   other things, the anticipated litigation costs Miller would incur to pursue the Hereford

11   litigation. Miller Decl., 5:18-21. The agreement was memorialized in that certain

12   Confirmation of Assignment of Rights and Joint Venture Agreement, effective as of

13   February 1, 2013, (the "2013 JV Agreement"), in which Kleven expressly represents and

14   warrants that he is the sole 100% ownership of the RTT IP, that he has the right to grant

15   the RTT IP and that he has not previously assigned any interest therein, among a host of

16   related representations and warranties. Miller Decl., 5:22-28; Exhibit 4.

17       Shortly after entering into the 2013 JV Agreement, Kleven along with his

18   business advisor and manager, Richard LeRoy, requested various changes to the 2013

19   JV Agreement. A meeting was held a few days later at Mr. LeRoy's office to go over the

20   requested changes, including proposed changes to Kleven's assignment of rights and his

21   profit participation. Plaintiff was present at the meeting, and later joined the group for

22   lunch in nearby Century City during which the to-be-amended 2013 JV Agreement and

23   the planned Hereford litigation were discussed. In fact, Kleven refers to the lunch in his

24   subsequently filed – and failed – 2015 lawsuit to rescind his RTT agreements with

25   Defendants. Miller Decl., 6:1-10.

26       At no time during this meeting or the lunch afterward, or any other time until

27   2019 did Plaintiff mention to Defendants the purported RTT IP assignment rights or

28   otherwise assert any claims to the RTT IP. Miller Decl., 6:11-13.

The changes to the 2013 JV Agreement were memorialized in that certain Amendment to Confirmation of Assignment of Rights & Joint Venture Agreement dated February 27, 2013 (the "JV Amendment"). Miller Decl., 6:14-17; Exhibit 5. Pursuant to the 2013 JV Agreement and JV Amendment, Kleven tendered to Rin a notarized Intellectual Property Assignment, dated March 26, 2013 (the "Notarized Assignment"). Miller Decl., 6:18-21; Exhibit 6. In the Notarized Assignment, Kleven again represents and warrants his sole 100% ownership of the RTT IP rights, his unfettered right to grant RTT IP rights and no previous transfers thereof. Miller Decl., 6:22-24.

> ## 2. The *Kleven v. Hereford* U.S. District Court Trademark Litigation, and Plaintiff's Knowledge/Notice Thereof

After Hereford and RTTI's default was taken, the case against Belleair went to trial, commencing on December 2, 2014. Miller Decl., 7:3-4. The JV Agreement, the Amendment to JV Agreement and the Notarized Assignments were all trial exhibits, admitted without objection. **Plaintiff accompanied Kleven on at least one day of trial.** Miller Decl., 7:4-6. The court issued its Findings of Fact and Conclusions of Law in the case on August 21, 2015, reciting the history of Rin Tin Tin, the RTT IP and the various assignments referenced above. The court found the RTT U.S. trademark registrations were obtained by fraud and concluded they should be cancelled. Miller Decl., 7:7-11. At no time during the Kleven v. Hereford litigation did Plaintiff notify, communicate or mention to Defendants the some five years earlier purported assignment from Kleven, Miller Decl., 7:12-14.

> ## 3. The May 2014 Deal Memo Between Kleven, Defendants, Shamrock and Others

In the interest of pursuing jointly their claims against Hereford, RTTI and Bellaire, and in order to consolidate ownership of all RTT IP rights, Kleven, Rin, Shamrock and the latter two's principals entered into negotiations to resolve the entirety of their conflicts. Thereafter, on or about May 9, 2014, Kleven, Defendants, LaScala,

1    Shamrock and Tierney entered into a settlement, joint defense and RTT IP rights
2    consolidation agreement styled a "Deal Memo." Miller Decl. 7:15-22; Exhibit 7.

3        For the purpose of the within Motion, the most significant terms of the Deal
4    Memo were: (a) the pooling of all of RTT IP and its transfer to a special purpose entity
5    upon the successful conclusion of the *Kleven v. Hereford* litigation; (b) the RTT IP
6    rights interests would be evenly divided; (c) the parties would cooperate in prosecuting
7    their claims against the *Kleven v. Hereford* defendants; (d) Tierney would assist Kleven
8    and Rin action; and, (e) Kleven again expressly affirmed and repeated his prior
9    representations and warranties as to his RTT IP ownership and no prior or conflicting
10   grant of such rights. Miller Decl. 7:23-8:5.

11          **4.    Kleven's State Court Action against Defendants and Settlement,**
12              **and Plaintiff's Knowledge/Notice Thereof**

13       On February 9, 2015, Kleven filed a state court action against Defendants,
14   LaScala, Shamrock and others for a variety of inflammatory tort claims, seeking to void
15   his prior agreements with and assignments to Defendants and rescind the 2014 Deal
16   Memo, entitled *Kleven v. Rin*, Los Angeles Superior Court Case No. BC571980 (the
17   "State Court Action"). Miller Decl., 8:6-10.

18       However, even before filing his State Court Action, Kleven had already sought to
19   torpedo the *Kleven v. Hereford* case, attempting to have it dismissed, seeking to have the
20   court not issue its Findings of Fact and Conclusions of Law, asserting that Rin had no
21   standing and making covert side deals with defendant Bellaire and its principal Dwight
22   Erickson ("Erickson"). Miller Decl., 8:11-15.

23       Specifically, Kleven filed an objection to Rin's Standing in the action, claiming
24   he held 100% of the RTT IP rights and Rin had none. Miller Decl., 8:16-19; Exhibit 8.
25   Rin, Shamrock and Kleven filed numerous oppositions, replies and objections. Despite
26   the fact that, if true, Plaintiff's claimed purported assignment of 50% of the RTT IP
27   rights is not only highly relevant to, but goes to the very heart of this dispute, not a word
28   is mentioned in the filings concerning any purported assignment.

LAW OFFICE OF DAVID L. GERNSBACHER APC

7

**15**

1   Miller Decl., 8:20-24.

2        Once Rin and its counsel became aware of Kleven's covert contact with Bellaire,

3   Rin insisted and Bellaire agreed to produce copies of the written contacts between

4   Kleven and Erickson, in lieu of facing a motion by Rin. Among the documents produced

5   by Bellaire of Kleven's secret collusion with Bellaire are letters written to Erickson

6   discussing the collusive plans and **copied to Plaintiff**. Miller Decl., 8:25-9:3; Exhibit 9.

7        Kleven's attempts to sabotage the *Kleven v. Hereford* litigation were rebuffed by

8   the court, incorporating into its Findings of Fact and Conclusions of Law factual

9   findings and legal conclusions as to the issues raised by Kleven to derail the *Kleven v.*

10  *Hereford* lawsuit. Miller Decl., 9:4-7.

11       Although well aware of the State Court Action (see below), Plaintiff neither

12  joined with Kleven nor intervened to assert his purported rights, and Kleven makes

13  no mention of any such purported assignment in his Complaint. In fact, Kleven

14  alleges in his state court complaint that he is the sole rightful owner of 100% of the

15  RTT IP rights. Miller Decl., 9:8-13; Exhibit 10.

16       On July 21, 2015, the state court granted an anti-SLAPP motion previously

17  filed by Shamrock and Tierney, and dismissed them from the case. Miller Decl.,

18  9:14-16. On March 7, 2016, after refusing to respond to discovery and facing a

19  Motion for Terminating Sanctions, Kleven agreed to settle and dismiss the State

20  Court Action against all remaining defendants.

21       The settlement was a complete victory for Defendants and the other State

22  Court Action defendants, and included the following:

23       (1)   A Settlement Agreement under which Kleven:

24             (a)   recants each and every accusation of wrongdoing by all defendants;

25             (b)   agrees to assign to Rin the remainder of his RTT IP rights;

26             (c)   represents and warrants that other than Defendants, Kleven had

27  never previously conveyed any RTT IP rights;

28

LAW OFFICE OF DAVID L. GERNSBACHER APC

8

**16**

1          (d)      agrees and stipulates to a Judgment in favor of the defendants and
2    which includes all of the foregoing and other terms in Defendants' favor;

3          (e)      agrees and stipulates to a Permanent Injunction, barring Kleven
4    and all persons acting in concert with him from ever interfering with Defendants'
5    RTT IP rights, disparaging Defendants and disparaging any Rin Tin Tin projects; and,

6          (f)      agrees that should he violate any of the agreement's terms, he
7    would be subject to a malicious prosecution action by the defendants;

8    (2)      Assignment of Kleven's remaining RTT IP rights.
9    Miller Decl., 9:17-9:20-10:13; Exhibits 11-14.

10   **Plaintiff was present throughout the March 7, 2016 hearing during which**
11   **the settlement documents were signed, the Judgment entered and the RTT IP**
12   **assignments executed by Kleven and pronounced by the court, requiring**
13   **Kleven's understanding of and agreement with the settlement terms. Moreover,**
14   **Plaintiff was present at an earlier hearing during which Plaintiff agreed to**
15   **receive service of documents on Kleven's behalf. Among the documents served**
16   **directly upon Plaintiff were copies of each of the settlement documents**
17   **referenced above**. Miller Decl.,10:14-21.

18   **Plaintiff, in fact, spoke up in open court, agreeing to accept service for**
19   **Kleven, yet not once at the hearings did Plaintiff mention the purported 50% RTT**
20   **IP assignment from Kleven** (Miller Decl., 10:22-24**). Instead, Plaintiff chose to keep**
21   **secret about a purported assignment which, if actually true, at once rendering false**
22   **Kleven's express warrant and representations of sole ownership of the rights (other**
23   **than the 50% previously assigned to Rin) and Kleven having never before**
24   **transferred any such rights to anyone else, and despite the fact that, if Plaintiff**
25   **actually believed in the truth of his purported 50% ownership interest, a grand**
26   **fraud was being committed on the court and Defendants right before Plaintiff's**
27   **eyes.** Miller Decl., 10:25-11:3.

28

9          **17**

LAW OFFICE OF DAVID L. GERNSBACHER APC

LAW OFFICE OF DAVID L. GERNSBACHER APC

## 5.   Defendants' Efforts to Exploit Its Rin Tin Tin IP, and Plaintiff's Attempt to Hold Hostage A Warner Bros. RTT Deal

From the initial May 29, 2009 50-50 Partnership Agreement drafted by Kleven up to and including the present, Defendants have expended considerable time, effort and funds in their efforts to protect and exploit their RTT IP rights in reliance upon the validity of those rights and the absence of undisclosed and concealed contrary claims including, without limitation, the following:

(1)   more than $360,000 in attorneys' fees and expenses prosecuting the *Kleven v. Hereford action,* in performance of the agreements with Kleven;

(2)   three original completed Rin Tin Tin scripts, valued at $750,000, or the greater amount of $1,800,000 if all three movies were made;

(3)   more than $145,000 for attorney and other professionals' research, due diligence, chain of title and rights examinations, reviews and reports;

(4)   $8,000 for developing and producing a "sizzle" video depicting an updated concept of the iconic Rin Tin Tin as a modern day hero and more than 75 hours of in pre-production, production and post-production time for the "sizzle" video;

(5)   travel, transportation, hotel and meal expenses of more than $30,000;

(6)   multiple crucial introduction meetings and pitches with various studios, producers, financiers, agents and others, having an immeasurable relationship value, involving well in excess of 1,100 hours of time and effort;

(7)   the cancellation of Hereford's U.S. trademark registrations which prevented the participation of any entertainment project participant;

(8)   no less than $40,000 and 400 + hours of time, effort and expertise to advance and re-position the modern version of Rin Tin Tin; and,

(9)   in excess of $260,000 in attorneys' fees and expenses and in excess of 450 hours defending Kleven's baseless State Court Action. Miller Decl., 11:4-12 :1.

In late 2019, Defendants' decade-long efforts to make a RTT project a reality finally culminated in a proposed multi-project deal with Warner Bros. for what would be

10                                                        **18**

the first Rin Tin Tin major studio film project in 75 years at the very studio Rin Tin Tin saved in 1929. Miller Decl., 12:2-5.

Despite having direct knowledge and certainly more than ample notice for at least nine years of Defendant's RTT IP rights, Plaintiff instead chose to lay in wait to finally assert his purported RTT IP assigned rights claim when Plaintiff knew, regardless of the claim's actual merit, he could leverage its impact exponentially by making a cease and desist demand on Warner Bros. Miller Decl., 12:6-10.

On April 24, 2020, Plaintiff's attorney sent such a demand letter to Warner Bros. Vice President/General Counsel John Rogovin, knowing full well that, like any studio, Warner Bros. would freeze all RTT activity and insist that Plaintiff's claim be resolved or the studio walk away from the deal. Miller Decl., 12:11-17; Exhibit 14.

Plaintiff has ratcheted up the undeserved leverage of his purported claim's even more by naming Warner Bros. as a defendant in the instant action despite his knowledge that Warner Bros. was unaware of Plaintiff's purported RTT IP claim and there is, in fact, no agreement with Warner Bros. Miller Decl., 12:18-21.

## III.    PLAINTIFF'S PURPORTED CLAIMS ARE SUBJECT TO CALIFORNIA'S ANTI-SLAPP STATUTE

Plaintiff's complaint and the purported claims asserted therein constitute a SLAPP suit subject to California's anti-SLAPP statute, Code of Civil Procedure ("CCP") section 425.16. A court considering a motion to strike under section 425.16, must engage in a two-part inquiry.

First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 110 (9th Cir. 2003); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1129 (N.D.Cal. 1999); see also *Wilcox v. Superior Court,* 27 Cal.App.4th 809, 819-20 (1994).

Second, once the defendant has made the requisite prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the

LAW OFFICE OF DAVID L. GERNSBACHER APC

11

challenged claims." *Globetrotter Software*, 63 F.Supp.2d at 1129. If "the court determines that the plaintiff has not established that there is a probability that the plaintiff will prevail on the claim," the motion to strike should not be denied. CCP section 425.16(b)(1). in other words, the plaintiff "must demonstrate the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. [Citations.]" *Rusheen v. Cohen*, 37 Cal.4th 1048, 1055 (2006).

A.   **Plaintiff's Purported Claims Arise Out of Defendants' Protected Activities**

Plaintiff's purported claims are substantively nothing more than a thinly veiled attempt by Plaintiff to pick up where Kleven left off and attack Defendants' exercise of their right to petition two separate courts defending, enforcing and confirming their RTT IP rights in multiple writings and court appearances.

First was Defendants' exercise of their right to petition this Court, successfully enforcing their rights in the in *Kleven v. Hereford* case-in-chief against Hereford and Belleair. Second, Defendants had to defend their right to petition in response to Kleven's "standing" attack in the closing months of the same District Court lawsuit – an attack this Court rejected.

Third, Defendants' rights to pursue the claims articulated in their complaint and other writings and arguments in the *Kleven v. Hereford* action faced a renewed assault by Kleven in the form of his State Court Action, involving multiple pleadings, motions, oral arguments and, ultimately, a judicially supervised Settlement Agreement and Judgment by the court vindicating Defendants' prior successful pursuit through litigation of their RTT IP rights. Of particular note is the multitude of spurious allegations by Kleven of heinous wrongdoing by Defendants – false allegations which can only be viewed as an attempt to so impugn Defendants' reputation that they choose to abandon the results achieved in the hard fought *Kleven v. Hereford* litigation rather than face further damage to their professional and personal reputations.

Kleven's tactic failed. Defendants stood their ground, exercised their right to defend themselves in the State Court Action, and, facing a cross-complaint for fraud and refusing to respond to discovery which he knew would exonerate Defendants, Kleven ended up recanting the false accusations and confessing that such wrongdoing never occurred, as set forth in the court-supervised Settlement Agreement and the court's Judgment.

In the instant Complaint, Plaintiff attempts to resurrect, virtually verbatim, the very same reputation-slamming accusations of wrongdoing by Defendants that Kleven not only admitted in a court supervised Settlement Agreement are false, but declared so in a Judgment – both of which writings are constitutionally protected, as were Defendants' right to petition activities before this Court in *Kleven v. Hereford* and before the court in the State Court Action; constitutionally protected activities Kleven sought by his [later admitted] spurious accusations to chill, frustrate, impede and, ultimately, deprive Defendants of the benefits from which they had a constitutional right to pursue.

Yet here Defendants are again. Almost five years later, Defendants are once more being subjected to these very same false, meritless but personally and professionally damning accusations in yet another, third, attack on constitutionally protected speech and in furtherance of Defendants' right of petition.

Indeed, all one need do is simply view a few of Plaintiff's allegations in the instant Complaint and compare other of Plaintiff's allegations to the recanted, false accusations previously leveled against Defendants in Kleven's state court complaint (Miller Decl., Exhibit 10 ("Kleven's Complaint")) to witness Plaintiff's truth and prior adjudications-be-damned assault on Defendants' rights of petition and free speech:

Plaintiff's Complaint:

**DEFENDANTS' UNLAWFUL ACTIONS**

33. On July 11, 2018, Defendant Miller threatened a lawsuit and contempt proceedings based on public statements made by Kleven that Plaintiff owned fifty (50) percent of the intellectual property rights in the

13

LAW OFFICE OF DAVID L. GERNSBACHER APC

character Rin Tin Tin.

Plaintiff's Complaint, 6:26-7:1.

35. On February 9, 2015, Kleven filed a complaint ("Kleven's 2015 Complaint") against several parties, including Defendants Rin, Inc., Jenson, and Miller alleging that they had manipulated the elderly Kleven into assigning away a fifty (50) percent interest in the intellectual property rights to the character Rin Tin Tin (the 50% Kleven retained after his 2011 assignment of 50% of the rights to Plaintiff). . .

Plaintiff's Complaint, 7:5-9.

37. According to Kleven's 2015 Complaint, Defendant Jenson recommended Defendant Miller, who was practicing law at the time, to handle various intellectual property related issues for Kleven.

Plaintiff's Complaint, 7:11-13.

| Plaintiff's Complaint | Kleven's Complaint |
| --- | --- |
| 38. As described in Kleven's 2015 Complaint, Jenson, Miller, and a third party working with them misrepresented the terms of an agreement that Kleven signed on February 1, 2013, relying on their misrepresentations (the "2013 Agreement").<br>Plaintiff's Complaint, 7:14-16. | 13. . . . JENSON, LA SCALA, and MILLER represented to Plaintiff as memorializing the original terms agreed upon, and based upon that representation, Plaintiff signed it on February 1, 2013. In fact, the Joint Venture did not memorialize the original terms . . .<br>Kleven's Complaint, 3:8-15. |
| 39. Upon information and belief, Defendants Jenson, Miller, and Rin, Inc. convinced Kleven to file a lawsuit with them as plaintiffs to cancel eight federally registered trademarks related to Rin Tin Tin that were owned by Belleair Trading | 16. In 2013, Defendants JENSON, LA SCALA, and MILLER convinced Plaintiff that he needed to be a plaintiff along with Defendant RIN, INC., in a federal lawsuit involving cancellation of eight United States Trademark Registrations owned by |

14

LAW OFFICE OF DAVID L. GERNSBACHER APC

| | |
|---|---|
| International, LLC ("Belleair Trading"). Plaintiff's Complaint, 7:17-20. | Belleair Trading International, LLC. . . . Kleven's Complaint, 3:23-4:3. |
| 40. Upon information and belief, Miller and one other principal of Rin, Inc. drove to Kleven's home and found Kleven working in the garden. Upon information and belief, Kleven was not wearing his eyeglasses, which he needed to see, or his hearing aids, which he needed to hear. Upon information and belief, Defendant Miller and another principal of Defendant Rin presented Kleven with a document entitled Rin Tin Tin Deal Memorandum Agreement, which they told Kleven he needed to sign as part of their lawsuit against Belleair Trading. Upon information and belief, Kleven signed this agreement without understanding that, upon successful conclusion of the lawsuit against Belleair Trading, it would form a new company redistributing the Rin Tin Tin intellectual property. Plaintiff's Complaint, 7:21-8:2. | 17. During the pendency of the federal lawsuit, Defendants . . . drove to Plaintiffs home in Agua Dulce, and found Plaintiff working in his garden. At that time, Plaintiff did not have either reading glasses or hearing aids; he could not read or hear. Defendants . . . presented Plaintiff with a document entitled "Rin Tin Tin Deal Memorandum Agreement" (the "Deal Memo") . . . and represented to Plaintiff that he needed to sign it for the federal lawsuit. This Deal Memo would become effective upon the successful conclusion of the federal lawsuit, and would form a new company in which Plaintiff world only hold a 17% interest in the IP . . . Without understanding the effect of the Deal Memo, and based upon the representation that he needed to sign it for the federal lawsuit, Plaintiff executed the Deal Memo under duress. Kleven's Complaint, 4:4-17. |
| 41. Kleven's 2015 Complaint alleged that Defendants Rin, Inc., Jenson, Miller, and their partners systematically excluded Kleven from participation in the lawsuit | 19. During the trial of the federal lawsuit in December of 2014, it became apparent to Plaintiff that Defendants, and each of them, were not acting in Plaintiff's |

LAW OFFICE OF DAVID L. GERNSBACHER APC

against Belleair Trading and meetings concerning the Rin Tin Tin intellectual property where those Defendants entered into agreements that further diluted Kleven's remaining ownership interest. Plaintiff's Complaint, 8:3-7.

best interests, and in fact were doing everything to keep him from participating in the federal lawsuit. . . .
Kleven's Complaint, 4:20-25

20. Plaintiff requested inclusion in any and all meetings regarding the IP, but was excluded from several important meetings where deals were made and percentages agreed upon, which in fact diluted his ownership interest in the IP. Plaintiff was also excluded from admission in the federal lawsuit hearings and Trial, thereby necessitating Plaintiff to hire private counsel to negotiate his entry into the Courtroom with the Defendants.
Kleven's Complaint, 4:26-5:2.

The allegations of Defendants' purported wrongdoing from or mirroring Kleven's State Court Action allegations Plaintiff freely includes in the within Complaint – of no apparent use and for no apparent reason other than to attack Defendants' act of Petitioning the courts – were previously considered by this Court in rejecting Kleven's assertion that Rin had no standing to pursue the *Kleven v. Hereford* action, as set forth in the Court's Findings, and were further and finally disposed of by the Judgment and Settlement Agreement in the State Court Action. Plaintiff attempt to revive the twice ruled upon – and twice rejected – false averments of wrongdoing by Defendants constitutes a direct attack on the Findings, Judgment and Settlement Agreement, all writings memorializing Defendants' constitutionally protected right of petition.

Moreover, Plaintiff carries out his attack on Defendants' rights as Kleven's assignee. Given Plaintiff's purported (but undisclosed) claim of the very same RTT IP

LAW OFFICE OF DAVID L. GERNSBACHER APC

rights Kleven asserted he held, and Plaintiff's notice and knowledge both judicial proceedings – copied on emails planning the strategy which resulted in Kleven's forceful about-face in the *Kleven v. Here*ford action and on intimate terms with the proceedings in the State Court Action in which Plaintiff's claimed RTT IP rights interest, if true, would have clearly warranted his intervention in that action and certainly created circumstances compelling Plaintiff to speak up during the settlement hearing – place Plaintiff well within the within the parameters of Kleven's privy who ought to be, like his purported assignor Kleven, bound to this Court standing ruling, the state court Judgment and the state court supervised Settlement Agreement. It was Plaintiff's realization of this very predicament which logic, common sense and reason tell us was the impetus for Plaintiff's hardly transparent assault on the prior judicial proceedings and the writings which concluded both.

Plaintiff's complaint and the purported claims set forth therein (1) seek yet a third adjudication of matters central to disputes Defendants exercised their constitutionally protected right to petition the courts to resolve, (2) would not merely undermine but make a mockery of Defendants' litigation efforts and resulting  the three paramount writings in the *Kleven v. Hereford* and State Court Action, (3) asserts [10 years later] purported claims of ownership of RTT IP rights which are, in fact, the very same RTT IP rights Defendants exercised their right of petition to litigate in two courts, resulting in denial of Kleven's dismissal and standing claims in the *Kleven v. Hereford* action, and the state court Judgment and court supervised Settlement Agreement in the State Court Action, (4) would seek to disrupt constitutionally protected judicial writings resolving those rights and (6) would overturn the conveyance of expressly warranted IP rights pursuant to assignments expressly part and parcel of the judicial proceeding – all with Plaintiff's prior knowledge and in his presence. Plaintiff's purported claims clearly arise from and implicate acts and writings in furtherance of Defendants' right of petition

LAW OFFICE OF DAVID L. GERNSBACHER APC

**B.    Plaintiff Cannot Demonstrate A Probability of Prevailing on His Purported Claims**

Having met their burden under the first prong of the ANTI-SLAPP statute's required to prong analysis, the burden now shifts to Plaintiff to establish a probability that he will prevail on his purported fraudulent concealment and interference with prospective economic advantage claims. And, It is a burden Plaintiff cannot meet as a matter of law and indisputable fact.

**1.    California's Statute of Limitations Bars Plaintiff's Purported Claims**

Under CCP section 338(d), the three-year limitation period for fraud begins to run when the plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. *Robuck v. Dean Witter & Co., Inc.*, 649 F.2d 641, 644 (9th Cir. 1980); *National Automobile and Casualty Insurance Co. v. Payne*, 261 Cal.App.2d 403, 408-09 (1968).

As amply demonstrated in the concurrently filed supporting Declarations of Jeff Miller, James Tierney and Sasha Jenson, Plaintiff had notice and knowledge of Defendants' conflicting RTT IP rights and claims (the gravamen of Plaintiff's purported fraud claim) as early as the 2013 meeting at Kleven's home and in no event later than March 7, 2016, in connection with and at the conclusion of the State Court Action. At that point, again, at the latest, Plaintiff had all the information necessary regarding Defendants' conflicting RTT IP position to file his action. Yet Plaintiff waited until November 5, 2020, more than a year and a half past the running of the fraud statute of limitations before filing his complaint.

Likewise, Plaintiff's purported intentional interference claim is barred by the two-year statute of limitations under CCP Section 339's 2-year statute of limitations for intentional interference. *Tu-Vu Drive-In Corp. v. Davies*, 66 Cal.2d 435, 437 (1967); *Knoell v. Petrovich*, 76 Cal.App.4th 164, 168 (1999); *Augusta v. United*

18

LAW OFFICE OF DAVID L. GERNSBACHER APC

1  *Service Automobile Assn.*, 13 Cal.App.4th 4, 10 (1993); *Edwards v. Fresno*

2  *Community Hosp.*, 38 Cal.App.3d 702, 706 (1974).

3  **2.   Laches Bars Plaintiff's Purported Claims**

4  "Laches is an equitable limitation on a party's right to bring suit."*Jarrow*

5  *Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (2002) (quoting *Boone v.*

6  *Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)). To establish laches, a

7  defendant must show "an unreasonable delay by plaintiff in bringing suit, and . . .

8  prejudice to [it]self." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir.

9  2006). Determining whether a plaintiff delayed unreasonably consists of (1) assessing

10  the length of the delay and then (2) determining whether the delay was reasonable.

11  *Jarrow Formulas*, 304 F.3d at 838.

12  First, the Court must establish the length of the delay "measured from the time

13  plaintiff knew, or in the exercise of reasonable diligence, should have known about

14  its potential cause of action." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F.

15  Supp. 2d 1029, 1069 (D. Or. 2008) (citing *Jarrow Formulas*, 304 F.3d at 838–39).

16  The Court stops the clock on delay "when the lawsuit in which the defendant seeks to

17  invoke the laches defense is initiated." *Eat Right Foods Ltd. v. Whole Foods Mkt.,*

18  *Inc.*, 880 F.3d 1109, 1116 (9th Cir. 2018).

19  Second, the next determination is whether the delay was reasonable. That

20  inquiry is based on (1) the analogous statute of limitations and (2) the plaintiff's

21  relative diligence and degree of harm caused to the defendant by the delay. *Jarrow*

22  *Formulas*, 304 F.3d at 838.

23  Courts are to decide whether a delay is reasonable "in reference to the

24  limitations period for the analogous action at law." *Jarrow Formulas*, 304 F.3d at

25  835. If a plaintiff has brought suit outside of the analogous limitations period, there is

26  a presumption that laches applies. Id. at 836, 838. *Shouse v. Pierce Cty.*, 559 F.2d

27  1142, 1147 (9th Cir. 1977).

28

LAW OFFICE OF DAVID L. GERNSBACHER APC

19

**27**

As noted above, Plaintiff had notice and knowledge of Defendants' conflicting RTT IP rights and claims (the gravamen of Plaintiff's purported fraud claim) as early as the 2013 meeting at Kleven's home and in no event later than March 7, 2016, in connection with and at the conclusion of the State Court Action.

In addition, the limitations periods for the analogous actions at law, three years under CCP section 338(d) and two years under CCP section 339, at the latest ran more than a one and a half and two and a half years, respectively, prior to Plaintiff filing the within action.

With regard to the plaintiff's relative diligence and degree of harm caused to the defendant by the delay, in the instant action Plaintiff not only was anything but diligent, but he purposefully remained silent and did not disclose his purported RTT IP claims despite having numerous opportunities to do so, resulting in significant harm to Defendants including, without limitation, hundreds of thousands of dollars, hundreds of hours of work and use of industry goodwill and expertise. Moreover, if Plaintiff's claim is valid – it is not – its existence would have muted a significant portion of the State Court Trial and resulted in Plaintiff, not Kleven, being a party plaintiff in the *Kleven v. Hereford* action.

Plaintiff's long-delayed assertion of his purported fraud claim – waiting until after Defendants "cleaned-up" the IP via the *Kleven v. Hereford* litigation, defended against and settled the State Court Action and expending significant funds and effort to develop their RTT project – constitutes laches and should be barred.

### 3. Plaintiff's Deliberate Eight Years of Silence Defeat His Purported Claims

For eight years, Plaintiff has been silent about his purported 2011 assigned RTT IP rights despite having ample opportunity and every reason to speak up.

An estoppel may arise from silence where there is a duty to speak. (*Bollinger v. National Fire Ins. Co.* (1944) 25 Cal.2d 399; *People v. Ocean Shore Railroad,* 32 Cal.2d 406, 421-422 (1948); *Skulnick v.*

LAW OFFICE OF DAVID L. GERNSBACHER APC

*Roberts Express, Inc.*, 2 Cal.App.4th 884, 891 (1992); [additional citations omitted]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 179, p. 861.) " ' "An estoppel may arise also from silence as well as from words or conduct. But this is only where there is a duty to speak, and where the party upon whom such duty rests has an opportunity to speak, and, knowing that the circumstances require him to speak, remains silent." [Citations] [¶] "**It is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party.**" [Citation.]' " (*Elliano v. Assurance Co. of America* (1970) 3 Cal. App. 3d 446, 451, citing 10 Cal.Jur., Estoppel, § 16, pp. 631-632.)

*Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal.App.4th 1260, 1268-1269 (1999) (Emphasis added); see also, *Stewart v. Ragland*, 934 F.2d 1033, 1040-1041 (9th Cir. 1991). *In re Marriage of Recknor*, 138 Cal.App.3d 539, 546 (1982).

Here, there are more than sufficient facts to establish that under the particular circumstances of this case, on numerous occasions Plaintiff had a duty to speak out and inform Defendants and/or the court in the State Court Action that Plaintiff claims he has a 50% interest in the RTT IP purportedly assigned to him by Kleven in 2011.

The indisputable facts of this case clearly establish equitable estoppel: (1) Plaintiff clearly knew about the purported assignment; (2) Plaintiff intended his silence would be acted upon; (3) Defendants were ignorant of a purported assignment to Plaintiff; and, (4) Defendants relied on the absence of such knowledge and the existence of a purported assignment to their injury. *Morgan v. Gonzalez*, 495 F.3d

LAW OFFICE OF DAVID L. GERNSBACHER APC

21

**29**

1084, 1092 (9th Cir. 2007). Plaintiff's repeated instances of what can only be viewed as willful silence estops Plaintiff from asserting his purported claim.

### 4.    Plaintiff's Knowledge/Notice of Defendants' RTT IP Rights Defeat His Purported Fraudulent Concealment Claim

Regardless of whether Plaintiff's purported fraudulent concealment claim is time barred or barred by laches, as a matter of undeniable fact, Plaintiff was aware of the purportedly concealed fact of Defendants' conflicting RTT IP rights at and during the time Plaintiff falsely asserts he was ignorant thereof.

Because two necessary elements of a fraudulent concealment claim are the plaintiff's ignorance of the information allegedly concealed and the plaintiff's justifiable reliance on the absence of such information (see, *Bank of the West v. Valley Nat. Bank of Arizona*, 41 F.3d 471, 474 (9th Cir. 1994) (quoting *Hackethal v. National Casualty Co.*, 189 Cal.App.3d 1102, 1111 (1987)), Plaintiff as a matter of law cannot prevail on his purported fraudulent concealment claim.

### 5.    Defendants' RTT IP Interest Defeats Plaintiff's Purported Intentional Interference Claim

Because Plaintiff cannot, and is not allowed to, challenge the RTT IP rights held by Defendants, whether they be 100% as the State Court settlement and Judgment establish, or even 50% as would result after deducting Plaintiff's purported 50% interest, Plaintiff is unable to establish the requisite element of his purported claim that Defendants' exploitation of their RTT IP rights (which, according to Plaintiff's purported claim, are the basis of Defendants' purported interference with Plaintiff's alleged prospective economic advantage) were wrongful. *Summit Mach. Tool Mfg .Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1442 (9th Cir. 1993).

As a holder of the RTT IP rights, Defendants, as a matter of law, had and have the absolute right and privilege to exploit those rights, as would any common IP rights holder. *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 645 (9th Cir. 2020); *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.

LAW OFFICE OF DAVID L. GERNSBACHER APC

22

LAW OFFICE OF DAVID L. GERNSBACHER APC

1996) (citing *Oddo v. Ries*, 743 F.2d 630, 632-33 (9th Cir.1984) ("A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright.") ). Such a right defeats, as a matter of law, the requisite "wrongful" element of Plaintiff's purported interference claim, thus defeating the purported claim *in toto*.

Moreover, section 205(d) of the Copyright Act establishes priority of rights as between conflicting assignments/transfers of ownership: the first recorded assignment will be taken as valid as against any later alleged assignments:

> As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer. Otherwise the later transfer prevails if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, and without notice of the earlier transfer.

17 U.S.C section 205(d).

Defendants' recordation of their RTT IP assignment from Kleven in accordance with the Judgment both negates notice of the purported 2011 assignment and establishes Defendants' priority over Plaintiff's non-recorded purported as a matter of law, defeating the Plaintiff's purported claims.[2]

As set forth in the concurrently filed Miller Decl., Defendants' assignments from Kleven, culminating with the state court action Judgment and the Settlement

---

[2]   The March 17, 2016 Settlement Agreement and Judgment's negation of both the existence of and any notice to Defendants of the purported 2011 assignment is in addition to the absence of any such notice due to Plaintiff's deliberate silence for eight years in the face of circumstances all but compelling Plaintiff to speak out.

23

**31**

Agreement's required assignment by Kleven to Rin have been duly recorded with the U.S. Copyright Office. Plaintiff's purported 2011 assignment from Kleven has **never** been recorded with the U.S. Copyright Office, nor has it been filed with the California Secretary of State's office under the UCC or otherwise – not only rendering the purported claimed assignment ineffective as against Defendants' rights but also of incapable of being enforced for purposes of seeking monetary damages under Federal and California law – the very claims Defendant seeks under his two "coercive" purported claims. See, *In re Peregrine Entertainment, Ltd.*, 116 B.R. 194 (C.D. Cal. 1990) (addressing perfection of copyright liens and assignments and the relative rights of holders thereof in the context of a Ch. 11 proceeding).

Separate and distinct from the deleterious affect Defendants' recording and Plaintiff's non-recording have on the viability and enforceability of Plaintiff's purported assigned rights, is what Plaintiff's act of never recording the purported assignment says about its very existence, or, rather, the purported assignment's non-existence, consistent with:

(1)     eight years of Plaintiff knowingly, deliberately and astoundingly resolutely suppressed the existence of a purported RTT IP rights assignment;[3]

(2)     countless oral representations and eight separate written express representations and warranties by Kleven, Plaintiff's purported assignor, expressly disavowing and contradicting the existence of any prior assignment of RTT IP rights;

(3)     assertions, claims and allegations in two separate court cases in which a purported assignment of RTT IP rights to Plaintiff is not only not mentioned despite

---

[3]     Notably, in the State Court Action Plaintiff (1) **agreed to be served and, in fact, received advance copies of the settlement documents**; (b) **witnessed the hearing on the settlement and Kleven's examination by the court**; (c) **witnessed Kleven's execution of the settlement documents**; and, (d) **witnessed the court's announcement it was signing the Judgment**.

24

both lawsuits' primary focus on RTT IP rights ownership, but which are **all** wholly inconsistent with and contradict a purported assignment of RTT IP rights; and,

(4)    most significantly (and equally important as to both prongs of the anti-SLAPP analysis), three writings in two judicial proceedings in which Defendants exercised their constitutional right of petition which are inherently inconsistent with the existence of Plaintiff's purportedly assigned IP rights, and a Settlement Agreement and Judgment which deny the existence of any such assignment.

> **6.    Plaintiff's Purported Declaratory Relief/Injunction Remedies Claim Is Barred and Defeated By the Same Defenses Which Bar and Defeat Plaintiff's Fraudulent Concealment and Interference Claims**

Plaintiff's purported claims for declaratory relief and injunction are not lawful claims, but remedies dependent upon the viability of Plaintiff's purported claims for fraudulent concealment and interference, the defeat of these two "coercive" claims spells the defeat of the declaratory relief and injunction remedies sought by Plaintiff. *Guessous v. Chrome Hearts, LLC*, 179 Cal. App.4th 1177, 1187 (2009); *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1111 (9th Cir. 1999); *Stocke W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989); *Lane v. Vitek Real Estate Indus. Group*, 713 F.Supp.2d 1092, 1104 (E.D.Cal.2010).

## VI.    CONCLUSION

For the foregoing reasons and based upon the foregoing presented facts and authorities, Defendants respectfully request that this Court grant their anti-SLAPP motion and order the dismissal of Plaintiff's complaint and the purported claims asserted therein, in Defendants' favor and with prejudice.

Dated: February 25, 2021        /s/ David L. Gernsbacher
                                David L. Gernsbacher
                                LAW OFFICE OF DAVID L. GERNSBACHER APC
                                Attorney for Defendants Rin, Inc., Jeff Miller and
                                Alexander "Sasha" Jenson

## **CERTIFICATE OF SERVICE**

I, David L. Gernsbacher, hereby declare under penalty of perjury under United States law, as follows:

I am the principal of Law Office of David L. Gernsbacher APC, with offices at 9100 Wilshire Blvd., Beverly Hills, California 90212.

On February 25, 2021, I caused the foregoing **NOTICE OF SPECIAL MOTION TO STRIKE AND SPECIAL MOTION TO STRIKE [CA CCP §425.16]; MEMORANDUM OF POINTS AND AUTHORITIES** to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on February 25, 2021, at Los Angeles County, California.

 /s/ David L. Gernsbacher
David L. Gernsbacher

LAW OFFICE OF DAVID L. GERNSBACHER APC

RTT/Legal/Duthie Claim/pldgs/Anti-SLAPP Motion-revised-02232021