UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT DUTHIE, an individual<br><br>Plaintiff,<br><br>v.<br><br>RIN, INC. a California corporation; JEFF MILLER, an individual in California; ALEXANDER "SASHA" JENSON, an individual in California; WARNER BROS. ENTERTAINMENT INC., a Delaware corporation; and Does 1-10,<br><br>Defendant. | Case No. 20-CV-10182-AB<br><br>**ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE** |

## I. INTRODUCTION

Before the Court is Defendants' Rin, Inc., Jeff Miller and Alexander "Sasha" Jenson Rin Inc. ("Defendants") Special Motion to Strike Pursuant to California Code of Civil Procedure § 425.16. (Dkt. No. 12, "Motion" or "Mot."). Plaintiff Scott

1.

Duthie ("Plaintiff") opposed (Dkt. No. 18, "Opposition" or "Opp'n"). Defendants replied (Dkt. No. 19, "Reply"). On March 26, 2021, the Court heard oral argument and took this matter under submission. (Dkt. No. 26.) For the reasons stated below, the Court **DENIES** Defendants' Motion.

## II.   BACKGROUND

### A. Factual Background

The following facts are taken from the allegations in Plaintiff's Complaint (Dkt. No. 1, "Complaint"). Rin Tin Tin is a famous German Shepherd canine character that starred in dozens of international movies, television shows, and books. (Complaint ¶ 1.) Rin Tin Tin has yielded millions of dollars in profits. (*Id.*)

In 2011, Max Kleven assigned fifty percent of his ownership interest in Rin Tin Tin to Plaintiff. (Complaint ¶ 2.) Plaintiff has been seeking to leverage those property rights in order to produce movies and shows and ultimately bring Rin Tin Tin back to the big screen. (*Id.*) In late 2019, Plaintiff learned that Defendants were developing and producing a new movie starring Rin Tin Tin. (Complaint ¶ 3.) Plaintiff reached out to Defendants and Defendants have not acknowledged the validity, if any, of Plaintiff's ownership. (Complaint ¶ 4.)

On February 9, 2015, Max Kleven filed a complaint against several parties, including Defendants, alleging that they had manipulated Kleven into assigning away his fifty percent interest in Rin Tin Tin. (Complaint ¶¶ 34–41.) This lawsuit ended in settlement. (*Id.*)

### B. Procedural Background

Plaintiff filed his Complaint in this Court on November 20, 2020 seeking declaratory and injunctive relief as well as alleging fraudulent concealment and tortious interference against Defendants. (*See* Complaint.) Defendants filed the instant Motion thereafter.

## III.   LEGAL STANDARD

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless

lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009.) California's anti-SLAPP statute authorizes a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal Civ. Proc. Code § 425.16.

Courts undertake a two-step process to resolve anti-SLAPP motions. *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. *Barry v. State Bar of California*, 2 Cal. 5th 318, 321 (2017). If the claim does arise from protected activity, the burden shifts to the plaintiff to show a "probability of prevailing on the claim." *Hallmark*, 599 F.3d at 903. At this second step, Plaintiff need only convince the court that its claim has "minimal merit" or a minimum level of legal sufficiency and triability." *Manzari v. Assoc. Newspapers Ltd,* 830 F.3d 881, 889 (9th Cir. 2016). If an anti-SLAPP motion challenges the "legal sufficiency" of a claim, then federal courts apply Rule 12(b)(6) standards. *Planned Parenthood Fed,n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

**IV.    DISCUSSION**

Defendants argue that Plaintiff unconstitutionally supports his claims for recovery with Defendant's acts which were in furtherance of the right to petition. (Mot. at 12; *See* Complaint ¶¶ 33–43.) Plaintiff counters that his description of Defendants' acts during the prior litigation were merely to provide context for the Court. (Opp'n at 6.) This Court agrees with Plaintiff.

"A claim arises from a protected activity when that activity underlies or forms the basis for the claim." *Oakland Bulk and Oversized Terminal, LLC v. City of Oakland*, 54 Cal.App.5th 738, 753 (Cal. Ct. App. 2020). "Critically the defendant's act underlying the plaintiff's cause of action must itself have been an act in

3.

furtherance of the right of petition or free speech." *Id.* "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." *Id.*

In *City of Oakland*, the defendant filed a similar special motion to strike pursuant to CCP § 425.16. *Oakland*, 54 Cal.App.5th at 738. The defendant there claimed that the plaintiffs' cause of action arose from defendant "defending against . . . claims in [a] federal case and appealing the federal court's ruling in that action." *Id.* at 754. The court determined otherwise: "Allegations about those things might be in the complaint but they are only evidence of [the defendant's] wrongdoing, evidence supporting plaintiffs' claims. They are not the gravamen of them." *Id.*

*City of Oakland* is analogous to this case. Prior to the instant action, Defendants and Max Kleven exercised their right to petition in multiple bouts of litigation. (Complaint ¶¶ 34–41.) In his Complaint, Plaintiff describes the actions Defendants allegedly took during this litigation period. (Complaint ¶¶ 33–43.) Defendants argue that by including these allegations in the Complaint, Plaintiff is unconstitutionally seeking redress for Defendants' acts in furtherance of this prior litigation. (Opp'n at 6.) However, similar to *City of Oakland,* Plaintiff's allegations of Defendants' actions during the prior litigation are not the gravamen of Plaintiff's claims. Indeed, each of Plaintiff's separate claims arise from Defendants' deal with Warner Brothers to produce a movie built around Rin Tin Tin and subsequently failing to recognize Plaintiff's alleged fifty percent interest in the intellectual property rights. (*See* Complaint ¶¶ 49–67.) Defendants have failed to make a showing that the allegations related to the prior litigation provide more than just context of the parties' relationships and the history of the Rin Tin Tin intellectual property rights.

Accordingly, Defendants have failed to make a threshold showing that Plaintiff's causes of action arise from the description of prior litigation contained in the Complaint at ¶¶ 33–43. Because Defendants have not met the first prong of the analysis, the Court need not address whether Plaintiff's claims have sufficient minimal

merit to survive the anti-SLAPP Motion.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion is **DENIED**.

Dated: April 20, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE