Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
David Shein (SBN 230870)
david@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820

Attorneys for Intervenor
SHAMROCK ENTERTAINMENT, LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SCOTT DUTHIE, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>RIN, INC. a California corporation;<br>JEFF MILLER, an individual;<br>ALEXANDER "SASHA" JENSON, an<br>individual; and Does 1-10,<br><br>  Defendants. | Case No. 2:20-cv-10182-AB-PLA<br>_Hon. André Birotte Jr. Presiding_<br><br>NOTICE OF MOTION AND<br>MOTION FOR LEAVE TO<br>INTERVENE PURSUANT TO FED.<br>R. CIV. P. 24; DECLARATION OF<br>JAMES P. TIERNEY FILED<br>HEREWITH<br><br>Date:  January 28, 2022<br>Time: 10:00 a.m.<br>Courtroom: 7B |
| RIN, INC. a California corporation;<br>JEFF MILLER, an individual;<br>ALEXANDER "SASHA" JENSON, an<br>individual,<br><br>  Counterclaimants,<br><br>  v.<br><br>SCOTT DUTHIE, an individual,<br><br>  Counterdefendant. | |

1   SHAMROCK ENTERTAINMENT,                )
    LTD, a California corporation,          )
2                                           )
                        Intervenor,         )
3                                           )
            v.                              )
4                                           )
    RIN, INC. a California corporation;     )
5   JEFF MILLER, an individual;            )
    ALEXANDER "SASHA" JENSON, an           )
6   individual; SCOTT DUTHIE, an           )
    individual; CASEY LA SCALA and         )
7   Does 1-10,                              )
                                            )
8                       Defendants.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2022, at 10:00 a.m. or as soon thereafter as the matter may be heard, Shamrock Entertainment, Ltd. ("Shamrock") will move the above-entitled Court, the Honorable André Birotte Jr., United States District Judge presiding, for an Order granting Shamrock leave to intervene and file its proposed Complaint in Intervention, lodged herewith.

Shamrock's Motion to intervene is brought pursuant to Federal Rule of Civil Procedure 24 and on the grounds that:

      1.    Shamrock is the sole owner of all intellectual property rights in Rin Tin Tin;

      2.    In this action, the plaintiff and defendants assert various claims as to their claimed ownership of rights in and to the Rin Tin Tin character and copyrights; and

      3.    Shamrock is entitled to intervene as of right or, alternatively, permissive intervention is appropriate, and intervention is timely sought.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities and Declaration filed with this Notice of Motion and Motion, the Complaint in Intervention lodged herewith, the pleadings and papers on file in this action and such additional matters and oral argument as may be offered in support of the Motion. This Motion is made following emails to plaintiff's and defendants' counsel notifying them of Shamrock's intended motion and the conference with plaintiff's counsel on December 30, 2021.

DONIGER / BURROUGHS

Dated: December 31, 2021

/s/ Stephen M. Doniger
Stephen M. Doniger, Esq.
David Shein, Esq.
Attorneys for Intervenor
SHAMROCK ENTERTAINMENT, LTD.

1

## **TABLE OF CONTENTS**

1. INTRODUCTION ……………………………………………..............1
   (a) Summary of Argument …………………………………………..1
   (b) Summary of Facts ………………………………………………..2
       (1) Lee Duncan's Dog, Rin Tin Tin, and Creation of the Heroic
           Canine Character Known as Rin Tin Tin ……………..……….2
       (2) The Late Herbert Leonard and His Rin Tin Tin Works and
           Rights …………………………………………………………3
       (3) Shamrock's Acquisition and Exercise of Rin Tin Tin Rights
           Held by Herbert Leonard and His Companies ……………...…3
       (4) Leonard's Purported Transfer to Max Kleven of Rights in Rin
           Tin Tin …………………………………………………...…4
       (5) Duthie Discloses to Tierney the Purported Acquisition of Rin
           Tin Tin rights from Kleven ………………………………….5
       (6) Shamrock, Tierney, Kleven and the Rin Parties Enter an
           Agreement for the Purposes of Exploiting Rin Tin Tin and
           Shamrock Obtains all Rin Tin Tin Intellectual Property Rights …5
       (7) Shamrock and the Instant Litigation …………………………..…6
       (8) The Existing Parties' Claims in this Litigation ………………….7
       (9) Shamrock's Claims in the Proposed Complaint in Intervention ....7
2. SHAMROCK IS PROPERLY GRANTED LEAVE TO INTERVENE …………..8
   (a) Shamrock is Entitled to Intervene as a Matter of Right …………………..8
       (1) Shamrock's Application to Intervene is Timely…………………..8
           (i)  The Stage of the Proceedings: This Case is Only Now at
               Issue and Discovery is Only Now Beginning ……………..9
           (ii)  The Existing Parties Would Not Be Prejudiced by
               Shamrock's Intervention………………………………..10
           (iii)  Shamrock has Acted Promptly Upon Learning of the
               Parties' Claims as to Shamrock's Interests ……………..11
       (2) The Copyright Act Gives Shamrock the Unconditional Right to
           Intervene ………………………………………………...12
       (3) Shamrock Has an Interest in the Subject of the Litigation – the
           Rights to Rin Tin Tin -- and Intervention is Appropriate to
           Ensure Shamrock's Interest is Not Impaired or Impeded ………13
           (i)  Shamrock has Legally Protected Interests in Rin Tin Tin .13
           (ii)  The Disposition of this Litigation in Shamrock's Absence
               May Impair or Impede Shamrock's Legally Protected
               Interests ………………………………………………..14
           (iii)  Shamrock's Interests are Not Adequately Represented by
               Plaintiffs or Defendants ………………...……………..15
   (b) Alternatively, Permissive Intervention is Proper …………………...……16

(1)    The Copyright Act Provides for the Copyright Proprietor's
Intervention …………………………………………………..16
(2)    Shamrock's Claims Share Important Questions of Law and Fact
with the Existing Parties' Claims and Defenses ………………..16
(3)    Shamrock's Motion to Intervene is Timely and there is an
Independent Basis for Jurisdiction of the Proposed Complaint
in Intervention …………………………………………………..17
(4)    The Facts Support the Court's Exercise of Its Discretion to
Allow Shamrock's Intervention, Which is Likely to Further a
Prompt Resolution of the Parties' Disputes ……………………17

3. CONCLUSION …………………………………………………………..18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Arikaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003), *cert. denied*
   540 U.S. 1017, 124 S.Ct. 570, 157 L.Ed.2d 430 ..................................... 8, 13, 14, 15

*Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996)...................................... 16

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007)............................................................ 9

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297
   (9th Cir. 1997) ..................................................................................................... 8, 9

*Legal Aid Society of Alameda County v. Dunlop*, 618 F.2d 48 (9th Cir. 1980)............ 9

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*,
   72 F.3d 361 (3d Cir. 1995) ..................................................................................... 9

*New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 153 F.R.D. 69
   (S.D.N.Y.  1994), *aff'd* 43 F.3d 1458 (2d Cir. 1994) ................................................ 9

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) .......... 17, 18

*Sierra Club v. Environmental Protection Agency*, 995 F.2d 1478
   (9th Cir. 1993) ...................................................................................................... 13

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977).......................... 17

*United States ex rel. McGough v. Covington Technologies Co.*,
   967 F.2d 1391 (9th Cir. 1992) ................................................................................ 9

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................ 8, 9, 10, 11

*United States v. Union Elec. Co.*, 64 F.3d 115 (8th Cir. 1995)................................... 10

*United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996) ................................... 9, 11

*Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996) ………………………………………14

**STATUTES**

17 U.S.C. § 501 ........................................................................................................... 12

**OTHER AUTHORITIES**

H. R. Rep. No. 94-176.................................................................................................. 12

**RULES**

Federal Rule of Civil Procedure 24........................................ 8, 9, 12, 13, 14, 15, 17,18

**TREATISES**

C. Wright & A. Miller, *Federal Practice & Procedure* (1972) .................................. 10

W.W.  Schwarzer, A.W. Tashima & J.M. Wagstaffe, *Federal Procedure*

  *Before Trial* (2013) ................................................................................................... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

1. ## INTRODUCTION

    (a)  ## Summary of Argument

Shamrock Entertainment, Ltd. ("Shamrock") respectfully submits this Memorandum in support of its Motion for leave to intervene.

Shamrock, is the successor to rights of Lee Duncan, Lee Duncan's widow and Herbert Leonard in the Rin Tin Tin character and mark and as well as the copyrights in an to *The Rin Tin Tin Story* and the *Rin Tin Tin: K-9 Cop* television series and the right to make derivative works based thereon. The current parties to this action do not have an interest in those marks and copyrights and Shamrock is the sole owner of all intellectual property rights in Rin Tin Tin pursuant to a November 12, 2021 assignment.

This motion is brought because the existing parties and proposed defendant-in-intervention Casey La Scala are claiming rights *that they do not have* to, inter alia, produce a Rin Tin Tin motion picture or television series, thereby clouding Shamrock's title and forcing this intervention. Specifically, Plaintiff Scott Duthie ("Duthie") claims "a fifty (50) percent interest in all intellectual property rights, including but not limited to copyright, in the United States and worldwide in the Rin Tin Tin character…" (Dkt. 1, ¶ 32) and Defendants and Counterclaimants Rin, Inc. ("Rin"), Jeff Miller ("Miller") and Alexander "Sasha" Jenson ("Jenson") claim to have "an absolute right to exploit their RTT IP" (Dkt. 50, p.3 l.13), including Rin Tin Tin copyrights (Dkt. 66, p. 14, ¶44) and fail to acknowledge that Shamrock is the sole owner of all Rin Tin Tin intellectual property. Further, Rin has wrongly claimed exclusive ownership in "Rin Tin Tin" trademarks by applying to register the "Rin Tin Tin" marks with the United States Patent and Trademark Office ("PTO") in, *inter alia*, Classes 009 (motion pictures) and 041 (sunglasses) on an intent-to-use basis, clouding title of Shamrock's exclusive rights in Rin Tin Tin, including its rights to produce and distribute Rin Tin Tin movies and merchandise.

1

1    The existing Rin Defendants and proposed defendant-in-intervention Casey La

2  Scala ("La Scala") are not only threatening Shamrock's intellectual property rights, but

3  are acting in violation of their respective fiduciary duties to Shamrock, as outlined

4  below.

5    Shamrock was aware of Duthie's initial complaint but believed that Rin

6  Defendants would adequately protect its rights in the litigation through, *inter alia*, the

7  motions to dismiss and motions to strike that were filed by those Defendants. Shamrock

8  only recently learned of the Rin Defendants' false claims of copyright ownership when

9  they filed their October 11, 2021 answer and counterclaims. Given those claims, the

10  Copyright Act and FRCP 24 provide an absolute right to intervene since Shamrock's

11  copyright ownership rights are the very rights over which the existing parties are

12  fighting. Since the existing parties cannot credibly claim prejudice, the issues raised by

13  the pleadings were only recently joined, the parties have not conducted discovery nor

14  filed motions for summary judgement or trial documents, and Plaintiff Duthie filed a

15  motion to modify the Scheduling Order just one week ago (December 24, 2021), there

16  is no basis to deny Shamrock's right to intervene and this motion should be granted.

17    **(b)**    **Summary of Facts**

18      **(1)**    **Lee Duncan's Dog, Rin Tin Tin, and Creation of the Heroic**

19                **Canine Character Known as Rin Tin Tin**

20    Between 1954 and 1958, Herbert B. Leonard ("Leonard") created, produced,

21  and became the copyright proprietor of 164 episodes of the television series entitled

22  *The Adventures of Rin Tin Tin*. These episodes were produced under a license from

23  Lee Duncan, the American soldier who found "Rinty" in France during World War I.

24  Rin Tin Tin later became a movie star for Warner Bros. during the 1920s. After Rin

25  Tin Tin's death in 1932, Duncan continued to license the name, image and likeness of

26  the iconic fictional Rin Tin Tin character in various media including movies, comic

27  books, and commercials, including endorsements for dog food. *See,* proposed

28  Complaint in Intervention at ¶6.

2

**(2)    The Late Herbert Leonard and His Rin Tin Tin Works and Rights**

In the 1970s, Leonard acquired from Duncan's estate all exploitation rights for the iconic Rin Tin Tin character (sometimes "RTT") and by 1994, Leonard owned the following Rin Tin Tin IP assets: (1) 164 episodes of the 1954 television series entitled *The Adventures of Rin Tin Tin* subject to an exclusive worldwide distribution license to Sony;" (Leonard originally licensed the name and image of Rin Tin Tin from Lee Duncan, the owner of the original Rin Tin Tin, and later he acquired the inclusive ownership of all exploitation rights in the character from Duncan's estate); (2) the James English book entitled *The Rin Tin Tin Story*; (3) 107 episodes of the *Rin Tin Tin K-9 Cop* television series subject to licenses to the Family Channel for US distribution and CBS International for foreign syndication; and (4) the common law trademark to Rin Tin Tin (pursuant to an order by United States District Court Judge Consuelo Marshall following a Lanham Act claim brought by Tierney on Leonard's behalf against Daphne Hereford in 1994). *Id.* at ¶8.

**(3)    Shamrock's Acquisition and Exercise of Rin Tin Tin Rights Held by Herbert Leonard and His Companies**

Between 1994 and 2000, Shamrock's principal and immediate predecessor, James P. Tierney, acquired Leonard's Rin Tin Tin rights and in 2004, Shamrock received from Tierney at least the following Rin Tin Tin rights: (1) the copyrights and all derivative motion picture, television and merchandising rights in the 107 episodes of the *Rin Tin Tin K-9 Cop* television series as well as Leonard's rights under the distribution agreements with the Family Channel for US distribution and the CBS International agreement for foreign distribution; (2) the James English book entitled *The Rin Tin Tin Story*; and (3) 100% of Leonard's share of income from Sony's distribution of the 1954 *The Adventures of Rin Tin Tin* television series." Id at ¶¶9-14

Shamrock has also exercised its Rin Tin Tin rights.  For example, in 2006, Shamrock licensed The Rin Tin Tin Story to Millennium Pictures and Avi Lerner for

MOTION FOR LEAVE TO INTERVENE

the 2007 motion picture entitled Finding Rin Tin Tin. Tierney received both a writing credit and an Executive Producer credit on this movie. In 2013, Shamrock licensed DVD distribution rights to the *Rin Tin Tin K-9 Cop* television series to Mill Creek and claimed trademark rights by placing "Rin Tin Tin™ SHAMROCK ENTERTAINMENT, LTD." on the DVD packaging; and in 2014, Shamrock entered into a new agreement with CBS for the exclusive worldwide distribution of the *Rin Tin Tin K-9 Cop* television series. As a result, Shamrock is the *only one* to have in modern times authorized the production of a motion picture and the distribution of television programs featuring the Rin Tin Tin character.  Id at ¶15.

### (4)   Leonard's Purported Transfer to Max Kleven of Rights in Rin Tin Tin

On December 10, 2005, Leonard, who was then reportedly near death, without funds, and living rent-free in a guesthouse owned by Max Kleven ("Kleven") purported to transfer certain rights in Rin Tin Tin to Kleven  *Id.* at ¶16. In or about late 2005-06, after being told by Kleven that he "had acquired Leonard's rights in Rin Tin Tin", Tierney told Kelvin that this purported transfer was without his authorization and would violate a 1994 Security Agreement between Tierney and Leonard (pursuant to which Tierney had a security interest on those assets and they could not be transferred without his written consent) and would cause those Rin Tin Tin assets to become subject to the entire amount of the debt. Tierney explained that Kleven acquired nothing more than the remake and sequel rights to the original (politically incorrect) *The Adventures of Rin Tin Tin* 1954 TV series (set at a US Calvary base called Fort Apache, Arizona circa 1880), and that 100% of all option money, rights, fees and profits went to Tierney until the lien was paid in full.

Kleven claimed at this time that he owned all rights in the 1954 TV series, but agreed that he had none of its film elements or promotional materials, had never made any distribution arrangements for the series or ever asked for or received an accounting

4

MOTION FOR LEAVE TO INTERVENE

1  from Sony. As a result of these discussions Kleven agreed to coordinate the

2  exploitation of any Rin Tin Tin rights with Tierney. *Id.* at ¶17.

3          **(5)     Duthie Discloses to Tierney the Purported Acquisition of Rin**

4                    **Tin Tin rights from Kleven**

5          In 2011, Mr. Duthie advised Tierney that he had acquired the rights from

6  Kleven to make a Rin Tin Tin movie at Warner Bros. ("WB") and was very angry

7  when he learned of Tierney's superior copyrights and trademarks as well as the

8  substantial lien on proceeds from any Rin Tin Tin movie, and was concerned that this

9  newly discovered information would hurt is relationship at Warner Bros. Shortly

10 after this conversation, Duthie advised Tierney that the project at Warner Bros. was

11 "dead."  And in 2013, Duthie alerted Tierney in a telephone call that Kleven was

12 once again misrepresenting his Rin Tin Tin rights in the case styled *Max Kleven v.*

13 *Daphne Hereford, et al*. U.S.D.C Case No. 2:13-cv-02783-AB-AGR (the "Federal

14 Action") by claiming 100% ownership of all Rin Tin Tin trademarks and copyrights.

15 Shamrock and Tierney intervened in that action, as they are again seeking to do here.

16 *Id.* at ¶¶18-19.

17          **(6)     Shamrock, Tierney, Kleven and the Rin Parties Enter an**

18                    **Agreement for the Purposes of Exploiting Rin Tin Tin and**

19                    **Shamrock Obtains all Rin Tin Tin Intellectual Property**

20                    **Rights**

21          To resolve the claims brought by Shamrock in the Federal Action against

22 Kleven and the Rin Parties, Shamrock and Tierney entered into a 2014 Deal Memo

23 with these parties, the main purpose of which was to it put all the Rin Tin Tin rights

24 into a single company ("Newco") to facilitate the sale or license of the IP to a

25 studio—which was unlikely so long as the rights were split or the subject of

26 litigation. Importantly, Newco was only given an option to acquire Shamrock's Rin

27 Tin Tin assets—if that option was not timely exercised, all RTT intellectual property

28

rights of Newco and its partners (other than Shamrock and Tierney) would revert exclusively to Shamrock. *Id.* at ¶¶20-21.

In 2016 Kleven assigned all Rin Tin Tin rights he had to Rin, Inc. for the benefit of Newco, but Rin Inc. failed to set up Newco. *Id.* at ¶23. Because the Rin Parties failed to exercise the option by the then June 15, 2020 deadline, all Rin Tin Tin intellectual property reverted to Shamrock. *Id.* at ¶29. On November 12, 2021, all right, title and interest in and to the copyrights and related intellectual property rights relating to Rin Tin Tin was formally assigned by Rin, Inc. to Shamrock. *Id.* at ¶¶37-39.

### (7)   Shamrock and the Instant Litigation

Shamrock learned of the filing of the complaint in November 2020 and promptly contacted counsel for both parties, advising them of their lack of rights in the RTT intellectual property. Shamrock also conferred with the Rin Defendants to take actions that would protect Shamrock's interests, including them to file an anti-SLAPP motion and the motions to dismiss and strike that were then filed. However, on October 11, 2021 those defendants filed their answer and a cross-complaint claiming that *they* owned Rin Tin Tin rights adverse to Shamrock, and making it clear that Shamrock would need to intervene. Specifically, Rin Defendants took the position for the first time that they acquired Rin Tin Tin rights under the 2014 Deal Memo when in fact they had acquired nothing more than an option which lapsed. Declaration of Jim P. Tierney ("Tierney Decl.") ¶¶4-7.

In addition to assertions of copyright ownership, Rin, Inc. has also claimed to the United States Patent and Trademark office that it holds exclusive rights in the Rin Tin Tin trademarks in derogation of Shamrock's Rin Tin Tin rights, including the marketability of Rin Tin Tin motion pictures and merchandise. Proposed Complaint in Intervention at ¶34.

///

///

6

**(8)     The Existing Parties' Claims in this Litigation**

In this litigation Duthie alleges that "[i]n 2005, Leonard assigned all his intellectual property rights that he owned in and to the Rin Tin Tin character to [Max] Kleven" and that "[o]n August 3, 2011, Kleven assigned a fifty (50) percent interest in all intellectual property rights, including but not limited to copyright, in the United States and worldwide in the Rin Tin Tin character to Plaintiff [Duthie]. Dkt. 1, ¶¶31-32.

The Rin Defendants dispute Duthie's claim to any interest in Rin Tin Tin and acknowledge Tierney's agreements with Leonard as well as Tierney's after-acquired Rin Tin Tin property. However, they now assert that they have a right to exploit Rin Tin Tin copyrights (Dkt. 66, p. 14, ¶44) and that the 2014 Deal Memo provided "the RTT IP rights interest would be evenly divided" (Dkt. 66, p. 32, ¶ 52)--allegations that are false, contrary to the letter and spirit of the 2014 Deal Memo, and ignore the contractual obligation of the Rin Parties to pay $350,000 by June 15, 2020 or transfer all Rin Tin Tin intellectual property rights to Shamrock.

Rin is also making a claim for money damages against Duthie based on the Rin Tin Tin rights acquired from Kleven in the 2016 assignment, but nowhere in their pleading do the Rin Defendants mention Shamrock's Security Interest, the expiration of their rights under the 2014 Deal Memo, or identify Shamrock is an indispensable party.

**(9)     Shamrock's Claims in the Proposed Complaint in Intervention**

Shamrock's proposed Complaint in Intervention asserts the following claims:

- A first claim for declaratory relief as to the ownership of the Rin Tin Tin rights;

- A second claim for cancellation for unfair competition under the Lanham Act; and,

- A third claim for breach of fiduciary duty, namely the Rin Parties respective breaches of their duties to Shamrock pursuant to the 2014 Deal Memo agreement.

## 2.    SHAMROCK IS PROPERLY GRANTED LEAVE TO INTERVENE

Federal Rule of Civil Procedure 24 governs motions to intervene.[1]  "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arikaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *cert. denied* 540 U.S. 1017, 124 S.Ct. 570, 157 L.Ed.2d 430.

Rule 24 allows for intervention as a matter of right and Shamrock respectfully submits that intervention is appropriate as of right under Rule 24(a).

### (a)    Shamrock is Entitled to Intervene as a Matter of Right

#### (1)    Shamrock's Application to Intervene is Timely

"Timeliness is 'the threshold requirement' for intervention as of right." *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997), *quoting United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  Accordingly, Shamrock first shows that, applying established Rule 24 principles, its motion to intervene is timely.

---

[1] Rule 24 provides in pertinent part:
(a) Intervention of Right.  On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

\*\*\*

(3) *Delay or Prejudice.*  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.
(c) Notice and Pleading Required.  A motion to intervene must be served on the parties as provided in Rule 5.  The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

8

1    "Mere lapse of time alone is not determinative."  *United States v. Oregon*, 745

2    F.2d 550, 552 (9th Cir. 1984).  Instead, the "court evaluates three factors to determine

3    whether a motion to intervene is timely: '(1) the stage of the proceeding at which an

4    applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for

5    and length of the delay.'"  *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir.

6    1996), *quoting United States ex rel. McGough v. Covington Technologies Co.*, 967

7    F.2d 1391, 1394 (9th Cir. 1992).  "[A]ll the circumstances of a case must be considered

8    in ascertaining whether or not a motion to intervene is timely under" Rule 24.  *Day v.*

9    *Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007), *quoting Legal Aid Society of Alameda*

10   *County v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980).  Further, "the timeliness requirement

11   for intervention as of right should be treated more leniently than for permissive

12   intervention because of the likelihood of more serious harm."  *United States v. Oregon*,

13   745 F.2d at 552.

14        Applying these principles, Shamrock's application to intervene is timely.

15              ***(i)        The Stage of the Proceedings: This Case is Only Now at***

16                        ***Issue and Discovery is Only Now Beginning***

17        The first factor is the stage of the proceedings.  *United States v. Washington*, 86

18   F.3d at 1503.  "[T]he critical inquiry is: what proceedings of substance on the merits

19   have occurred?"  *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder,*

20   *Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).  Thus, intervention may be untimely if sought

21   after the Court has ruled on summary judgment and nine months of discovery has been

22   completed.  *League of United Latin American Citizens*, 131 F.3d at 1303; *see, also,*

23   *New York Chinese TV Programs, Inc. v. U.E. Enterprises, Inc.*, 153 F.R.D. 69, 72

24   (S.D.N.Y. 1994) (intervention in copyright case denied where sought after judgment

25   entered), *aff'd* 43 F.3d 1458 (2d Cir. 1994).  But, intervention four years after a case

26   was filed is nevertheless timely if there was only "some written discovery[,] no

27   depositions taken [and] no dispositive motions filed, or decrees entered during the four

28   year period."  *Mountain Top*, 72 F.3d at 370.

Although this litigation was filed in November 2020 and a bench trial is presently set for February 1, 2022, the pleadings were not set until just two months ago on November 2, 2021 when Duthie filed his answer to the Rin Defendants' answer and cross-complaint which were filed on October 10, 2021. Dkt. 69 and 70. And the parties in this case have not conducted discovery (Dkt. 71, p.3) or filed dispositive motions. Indeed, on December 23, 2021, Duthie filed a motion to modify the Scheduling Order based in part on the facts that the pleadings were only recently set and that the parties had not conducted discovery. Dkt. 71. The current parties to the action have not filed any trial documents either. Given that the parties have not conducted discovery and no dispositive motions have been filed or decrees entered, the first factor supports granting this motion.

(ii)     ***The Existing Parties Would Not Be Prejudiced by Shamrock's Intervention***

The next factor in determining timeliness is "the issue of prejudice to the existing parties, which has been termed 'the most important consideration in deciding whether a motion for intervention is untimely.'" *United States v. Oregon*, 745 F.2d at 552, *quoting* 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1916, at 575 (1972).

"The question . . . is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.*, 64 F.3d 115, 1159 (8th Cir. 1995). To date, no party has indicated an intent to oppose Shamrock's intervention, and they cannot claim any prejudice from the same. The case is only now at issue and the current parties have conducted no discovery, nor filed dispositive motions or attended mediation. They have been aware of Shamrock's rights at all relevant and when the Rin Defendants filed their answer and counterclaim taking positions adverse to Shamrock's rights, the parties were advised by Shamrock that it would intervene. They cannot complain of, *e.g.*, "loss of evidence, settlements made

1  in expectation that no further claims would be made [or] the necessity of reopening

2  matters previously adjudicated . . . ."  1 W.W.  Schwarzer, A.W. Tashima & J.M.

3  Wagstaffe, *Federal Procedure Before Trial* ¶ 7:191 (2013).

4       Accordingly, the second factor also supports granting this motion.

5            *(iii)*    **Shamrock has Acted Promptly Upon Learning of the**

6                                **Parties' Claims as to Shamrock's Interests**

7       The final factor in determining timeliness is the reason for and length of the

8  delay.  *United States v. Washington*, 86 F.3d at 1503.  "Delay is measured from the

9  date the proposed intervenor should have been aware that its interests would no longer

10  be protected adequately by the parties, not the date it learned of the litigation."  *Id.*

11       Initially, despite their knowledge of Tierney and Shamrock's rights in the RTT

12  intellectual property, including Copyright Office recordings, none of the existing

13  parties saw fit to notify Shamrock of this litigation. Nevertheless, once Shamrock

14  learned of the filing of the complaint in November 2020, it promptly contacted counsel

15  for both parties, advising them of their total lack of rights, and conferred with the Rin

16  Defendants over steps to protect Shamrock's interests. The Rin Defendants then filed

17  multiple motions to dismiss and motions to strike to get this case dismissed.

18  Unfortunately, on October 11, 2021 those defendants filed an answer and cross-

19  complaint asserting that they owned Rin Tin Tin rights adverse to Shamrock, making

20  it clear that Shamrock would have to intervene. Specifically, Rin Defendants took the

21  position for the first time that they acquired Rin Tin Tin rights under the 2014 Deal

22  Memo when all that agreement provided them was an option which lapsed. Tierney

23  Decl. ¶¶4-7.

24       Shamrock's then-counsel passed away in November of 2021 requiring

25  Shamrock to seek new counsel to move to intervene. Shamrock retained the

26  undersigned on December 13, 2021 and has acted as promptly as practical to bring this

27  motion. *United States v. Oregon*, 745 F.2d at 552 (motion to intervene in action already

28  pending 15 years timely where filed following change in circumstances; case entering

new stage of proceedings that might affect intervenor was "a major reason for its attempted intervention at this time").

### (2)   The Copyright Act Gives Shamrock the Unconditional Right to Intervene

Federal Rule of Civil Procedure 24(a) provides two independent grounds for intervention as a matter of right. The first is where the applicant "is given an unconditional right to intervene by a federal statute; . . . ." Fed. R. Civ. P. 24(a)(1). That ground applies here—t    he Copyright Act provides that if an action is "institute[d]" implicating a copyright, "[t]he court . . . shall permit the intervention, of any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b) (emphasis added); H. R. Rep. No. 94-176 at 158 ("As under the Federal rules, the court has discretion [under § 501(b)] to require joinder of any person having or claiming an interest in the copyright; but, if any such person wishes to become a party, the court must permit that person's intervention" (emphasis added)).

Here, plaintiffs and defendants allege they own the copyrights in the Rin Tin Tin works. Duthie for his part instituted this action seeking an accounting under the Copyright Act (Dkt. 1, ¶51) and claiming "a fifty (50) percent interest in all intellectual property rights, including but not limited to copyright, in the United States and worldwide in the Rin Tin Tin character…" (Dkt. 1, ¶32) and Rin Defendants have purport to have the right to exploit Rin Tin Tin copyrights. Dkt. 66, p. 14, ¶44. A plain

MOTION FOR LEAVE TO INTERVENE

1  reading of Section 501(b) confers on Shamrock – as an owner of Rin Tin Tin copyrights

2  – the unconditional right to intervene.

3        Accordingly, Shamrock respectfully submits that Section 501(b) of the

4  Copyright Act gives it the unconditional right to intervene under Rule 24(a)(1).

5       **(3)**    **Shamrock Has an Interest in the Subject of the Litigation –**

6               **the Rights to Rin Tin Tin -- and Intervention is Appropriate**

7               **to Ensure Shamrock's Interest is Not Impaired or Impeded**

8        Shamrock has a second, independent basis under Rule 24(a) to intervene as of

9  right.  Rule 24(a)(2) provides for intervention as of right when the applicant "claims

10  an interest relating to the property or transaction that is the subject of the action, and is

11  so situated that disposing of the action may as a practical matter impair or impede the

12  movant's ability to protect its interest, unless existing parties adequately represent that

13  interest." To intervene as of right under Rule 24(a)(2), "(1) the applicant must timely

14  move to intervene; (2) the applicant must have a significantly protectable interest

15  relating to the property or transaction that is the subject of the action;  (3) the applicant

16  must be situated such that the disposition of the action may impair or impede the party's

17  ability to protect that interest; and (4) the applicant's interest must not be adequately

18  represented by existing parties." *Arikaki*, 324 F.3d at 1083.  The first requirement -- a

19  timely application -- is satisfied (*see, above* at 8-12), as are the remaining three

20  requirements to be considered under Rule 24(a)(2).

21             ***(i)***    ***Shamrock has Legally Protected Interests in Rin Tin Tin***

22        "The requirement of a significantly protectable interest is generally satisfied

23  when 'the interest is protectable under some law, and . . . there is a relationship between

24  the legally protected interest and the claims at issue.'" *Arikaki*, 324 F.3d at 1084,

25  *quoting Sierra Club v. Environmental Protection Agency*, 995 F.2d 1478, 1484 (9th

26  Cir. 1993).

27        Shamrock's rights in Rin Tin Tin, including without limitation, *The Rin Tin Tin*

28  *Stor*y, the *Rin Tin Tin: K-9 Cop* television series and trademark rights in "Rin Tin Tin"

are protected under the Copyright Act and the Lanham Act, and are protected against unfair competition by both federal and state law. Further, there is a direct relationship between Shamrock's legally protected interests and the claims in this litigation: plaintiffs and defendants claim some or all of those same rights and are purporting to litigate their validity and ownership.

Equally importantly, Shamrock has an obligation to invalidate the parties' claims of copyright ownership within three years of those claims. See, *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996)("claims of co-ownership, as distinct from claims of infringement," accrue only once, "when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." So owing, even if intervention is not granted, Shamrock will file a complaint for declaratory relief and that action would be deemed related to this action. That said, this motion should be granted as the requirement for intervention as of right under Rule 24(a)(2) is met.

### (ii) *The Disposition of this Litigation in Shamrock's Absence May Impair or Impede Shamrock's Legally Protected Interests*

The next requirement for intervention as of right under Rule 24(a)(2) is also met: the disposition of plaintiff's and defendants' claims in this action may impair or impede Shamrock's ability to protect and exploit its own Rin Tin Tin rights. *Arikaki*, 324 F.3d at 1083. Plaintiff specifically alleges that he owns rights in Rin Tin Tin (Dkt. 1, ¶¶32, 42, 46, and 50) (he does not) and that he is seeking to exploit those rights by producing motion pictures featuring Rin Tin Tin.  Dkt. 1, ¶63-64). For their part, the Rin Defendants claim the right to exploit Rin Tin Tin and that the 2014 Deal Memo provided "the RTT IP rights interest would be evenly divided" (Dkt. 66, p. 32, ¶ 52) when all that deal provided to Rin Defendants was an option that has expired and all rights belong to Shamrock. Thus, a ruling in this case in Shamrock's absence would

MOTION FOR LEAVE TO INTERVENE

"as a practical matter impair or impede" its pursuit and exploitation of its Rin Tin Tin rights.

### (iii)   *Shamrock's Interests are Not Adequately Represented by Plaintiffs or Defendants*

The remaining requirement for intervention as of right under Rule 24(a)(2) is also met: Shamrock's interests are not adequately represented by the existing parties. *Arikaki*, 324 F.3d at 1083.

The "Court considers three factors in determining the adequacy of representation: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* at 1086.

Neither plaintiffs' nor defendants' interests are "such that it will undoubtedly make all of [Shamrock's] arguments." *Id.* While Shamrock initially believed that the Rin Defendants would make the arguments necessary to dispense with Duthie's claims and protect Shamrock's interests, their recent filings have taken positions clearly adverse to Shamrock's rights and interests.

As to the second factor, plaintiffs and defendants are not capable and willing to make the arguments Shamrock will make. *Arikaki*, 324 F.3d at 1086.  That also is so because they claim rights that belong to Shamrock, and establishing Shamrock's rights would defeat their own claims.

As to the third and final factor, Shamrock plainly offers elements the present parties will neglect. *Arikaki*, 324 F.3d at 1086.  As stated above, Shamrock will show that it, not the existing parties, owns all intellectual property rights in and to Rin Tin Tin, including without limitation, *The Rin Tin Tin Story* and the *Rin Tin Tin: K-9 Cop* series.

Application of the three factors confirms the present parties would not adequately represent Shamrock's interest.  Accordingly, the requirements of Rule 24(a)(2) are satisfied, Shamrock is properly allowed to intervene as a matter of right and the Motion should be granted.

**(b)    Alternatively, Permissive Intervention is Proper**

For the reasons discussed above, Shamrock is properly allowed to intervene as a matter of right under Rule 24(a)(1) and/or Rule 24(a)(2).  But, if, for any reason, the Court concludes intervention as of right does not apply, Shamrock respectfully submits that it should be granted leave to intervene under Rule 24(b).

**(1)    The Copyright Act Provides for the Copyright Proprietor's Intervention**

Rule 24(b)(1)(A) provides that the Court may allow intervention by anyone who "is given a conditional right to intervene by a federal statute; . . . ."  Shamrock believes it is given an unconditional right to intervene by Section 501(b) of the Copyright Act. *See, above* at 11-12.  If, however, the Court concludes a copyright proprietor's right of intervention under Section 501(b) is conditioned upon the then-current pendency of a copyright infringement claim, then that conditional right of intervention provides a basis for permissive intervention under Rule 24(b)(1)(A).

**(2)    Shamrock's Claims Share Important Questions of Law and Fact with the Existing Parties' Claims and Defenses**

As an independent ground for permissive intervention, Rule 24(b)(1)(B) provides that the Court may allow intervention by anyone who "has a claim or defense that shares with the  main action a common question of law or fact."  "The existence of a 'common question' is liberally construed." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).   Here, Shamrock's claims, plaintiffs' claims and defendants' defenses and counterclaims share the common issue of who owns the Rin Tin Tin rights.    Accordingly, it is an understatement that the common questions of fact or law predominate.

16

**(3)     Shamrock's Motion to Intervene is Timely and there is an Independent Basis for Jurisdiction of the Proposed Complaint in Intervention**

Permissive intervention requires a timely motion and "independent grounds for jurisdiction" of the intervenor's claims. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). As discussed above, Shamrock has timely sought to intervene. *See, above* at 8-12. And, the Court has original jurisdiction of Shamrock's claims for declaratory relief as to ownership of copyrights and unfair competition under the Lanham Act. Accordingly, the requirements of a timely motion and independent grounds for jurisdiction are satisfied.

**(4)     The Facts Support the Court's Exercise of Its Discretion to Allow Shamrock's Intervention, Which is Likely to Further a Prompt Resolution of the Parties' Disputes**

As stated above, the requirements for permissive intervention are satisfied. *See, above* at 15-16. "[T]he court may also consider other factors . . . , including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry*, 587 F.3d at 955, *quoting Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Those factors confirm Shamrock's intervention should be permitted.

Because Shamrock owns Rin Tin Tin rights that are the subject of this lawsuit, the nature and extent of Shamrock's interest cuts strongly in favor of intervention. And becuase the existing parties claim to own rights that belong to Shamrock, considerations of whether the existing parties will adequately represent Shamrock's interests also cuts strongly in favor of intervention. *Cf. Perry*, 587 F.3d at 955-56 (Court acted within its discretion in denying permissive intervention where interests of proposed intervenors and existing party were identical).

Rule 24(b)(3) also requires that the Court "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R.

1   Civ. P. 24(b)(3); *Perry*, 587 F.3d at 955.  As set forth *infra*, here it will not. Indeed,

2   intervention may even lead to an earlier resolution because Shamrock's documented

3   rights are clearly superior to those of the other parties. This motion should therefore be

4   granted.

5   **3.    CONCLUSION**

6        Shamrock is the owner of the rights over which the existing parties are fighting,

7   and is thus entitled to intervene as of right either under Section 501(b) of the Copyright

8   Act or because the existing parties cannot adequately represent Shamrock's interests

9   and those interests will be impaired or impeded without intervention. And, if the Court

10  determines intervention as of right does not apply, this is the quintessential case where

11  permissive intervention is appropriate.  So owing, this motion should be granted.

12

13                                    DONIGER / BURROUGHS

14  Dated: December 31, 2021      /s/ Stephen M. Doniger
                                  Stephen M. Doniger, Esq.
15                                David Shein, Esq.
                                  Attorneys for Intervenor
16                                SHAMROCK ENTERTAINMENT, LTD.

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO INTERVENE